# HOUSTON REAL ESTATE INVESTMENT COM-PANY et al. v. HECHLER (YERRICK INTER-VENER).

### No. 2551.  Decided January 23, 1914 (138 Pac. 1159).

1. PLEADING—MOTION TO STRIKE—REDUNDANT MATTER. In a land-lord's action for rent, and to enforce the lien therefor given by Comp. Laws 1907, sections 1407-1414, an amendment striking from the complaint the prayer that attachment issue against defendant under those provisions, and that plaintiffs be adjudged to have a first lien upon all the defendant's property not ex-empt, and for such other relief as was just, leaving merely a prayer for general relief, did not change the nature of the action, or affect the rights of the parties, and would be stricken on motion of plaintiffs. (Page 70.)

2. STATUTES—RULE OF DECISION. Upon a question of the first im-pression the court is required to give full effect to Comp. Laws 1907, section 2489, providing that the Revised Statutes consti-tute the law of the state respecting the subjects to which they relate, and that their provisions and all proceedings under them are to be liberally construed with a view to affect their objects and promote justice, and that rules of equity shall prevail where there is any variance between them and rules of law respecting the same matter. (Page 70.)

3. PARTIES—INTERVENTION—STATUTES. The statute relating to intervention was not intended to apply only where a third per-son may have such an interest in the subject of the action as to make him an indispensable party, but it applies where such person at some stage of the proceeding before trial is shown to have an interest which would make him a proper party; but where, if a party is not an indispensable party, and his inter-vention would unduly delay a pending action or complicate the issues, and his rights could be protected in an independent action, his intervention should be denied. (Page 75.)

4. LANDLORD AND TENANT—LIEN—PROCEEDING TO ENFORCE. A land-lord may proceed in equity to foreclose his lien notwithstand-ing Comp. Laws 1907, sections 1407-1414, providing a landlord's lien. (Page 75.)

5. ATTACHMENT—RIGHT OF INTERVENING PARTY—VALIDITY. A party intervening and claiming ownership of property attached in a suit against another cannot assail the regularity or validity of the attachment. (Page 77.)

6. LANDLORD AND TENANT—LIEN—ATTACHMENT—INTERVENTION TO CONTEST—STATUTES. Where property is attached in an action

between third persons as in a lessor's action under Comp. Laws 1907, sections 1407-1414, giving a lien against the lessee's property, with right of attachment, the claimant may, as a matter of right, intervene in such action, and therein have determined his right to or interest in the property attached.    (Page 78.)

APPEAL from District Court, Third District; Hon. Geo. G. Armstrong, Judge.

Action by the Houston Real Estate Investment Company, a corporation and another, against L. L. Hechler, in which Carrie A. Yerrick filed complaint in intervention, claiming the attached property.

Complaint in intervention dismissed.    Intervener appeals.

REVERSED AND REMANDED, WITH DIRECTIONS TO REINSTATE THE COMPLAINT IN INTERVENTION.

*Howat, Macmillan & Nebeker,* and *Stephens, Smith & Porter* for appellant.

*Geo. N. Lawrence* and *A. T. Sanford* for respondents.

APPELLANTS' POINTS.

The complaint in intervention alleges that the intervenor owns the property involved, and was in possession thereof until it was taken from her by the sheriff under the writ of attachment.    Inasmuch as she claims to own the personal property which was the "matter in litigation," her interest is adverse to both the plaintiffs' and the defendant's, and therefore she clearly was entitled to intervene under all of the grounds given in Section 2925 Compiled Laws of Utah, 1907.    (*Wheelwright v. Nat'l Copper Bank,* 42 Utah, 579, 133 Pac. 132; *State ex rel. Newell v. District Court,* 37 Utah 418; 108 Pac. 1121; 11 Ency. Pl. & Pr. 496; Pomeroy Remedies & Rem. R. Section 423 *et seq.* and 439; *Potlach Lumber Company v. Runkel,* 23 L. R. A. (N. S.) 536.) Under the provisions of Section 2926 and general equitable

44 Utah—5

principles all persons claiming an interest in the property were necessary parties and the court on objection should have ordered the intervenor to be made a party defendant in order to fully settle the rights and claims to the property involved. (Tiffany Land. & Ten. 1958—24 Cyc. 1278.) Therefore the right to intervene should be unquestioned. The plaintiffs' lien on the defendant's property existed from the beginning of the tenancy, or anyway from the time the property was taken on the premises, and the commencement of the action did not initiate any new right—it only preserved and sought to enforce the pre-existing rights by foreclosure of the lien. (18 Am. & Eng. Ency. Law, (2nd Ed.) 335; 24 Cyc. 1250.) Nor did the attachment create the lien, it is simply a means of holding the property until a determination of the plaintiffs' foreclosure. (*State ex rel. Newell v. District Court, supra*—Tiffany L. & T., page 1955; *McKee v. Sims*, 92 Tex. 514, 1 S. W. 564.) Section 2925 is taken from Section 387 California C. C. Proc., which was at an early date, prior to our adoption, liberally construed in favor of intervention when the intervenor has a direct interest in the matter in litigation and will gain or lose by the direct operation of the judgment. (*Home v. Volcano Water Co.*, 13 Cal. 62, 72 Am. Dec. 569.) The fact that a party has another remedy does not affect his right to intervene. The right given under Section 2925 is cumulative not exclusive. (11 Ency. Pl. & Pr. 502; *Cofbey v. Greenfield*, 55 Cal. 382; *Kimball v. Richardson K. Co.*, 111 Cal. 386; 43 Pac. 1111; *Dennis v. Kolm*, 131 Cal. 91; 63 Pac. 141; *Potlatch Lumber Company v. Runkel*, 23 L. R. A. [N. S.] 536.)

FRICK, J.

This action was commenced by the plaintiffs, respondents here, as lessors, against the defendant L. L. Hechler as their tenant to recover rent. A lessor's attachment was issued, and certain property was attached thereunder as the property of the defendant. One Carrie Yerrick, the appellant here, sought to intervene in the lessor's action upon the alleged ground that she is the owner of the attached property. The

pleadings are very voluminous, covering thirty pages of the printed abstract. We shall not attempt to set them forth, even in condensed form. We shall, however, in the opinion refer to such parts to which we deem special reference necessary.

The action was based upon a claim for rent alleged to have been in arrears for a period exceeding seven months at the rate of $500 per month, amounting in the aggregate to the sum of $3594.97, and for attorney's fees in the sum of $500. Respondents prayed judgment "against the defendant for the sum of $3594.97," with legal interest, and for "$500 attorney's fees." They further prayed as follows: *"Plaintiffs further pray that an attachment issue against the defendant under the provisions of chapter 4 of the Compiled Laws of Utah 1907, and that plaintiffs be adjudged to have a first lien upon all of the property of said defendant not exempt from execution, and for such other relief as is just."* (Italics ours.)

Respondents' action is predicated on Comp. Laws 1907, sections 1407 to 1414, inclusive. Those sections, in substance, provide:

Sec. 1407. Lessors shall have a lien for rent due upon all the property of the lessee not exempt from execution so long as the lessee occupies the leased premises and for thirty days thereafter.

Sec. 1408. The lien is made superior to all other liens "excepting taxes, mortgages for purchase money, and liens of employees for services for one year next prior to the sale."

Sec. 1409. When any rent shall become due, or the lessee be about to remove his property from the leased premises, the lessor may apply to a court of competent jurisdiction "for a warrant to seize the property of such lessee."

Sec. 1410. "The lessor, his attorney, agent, or assigns shall, before the issue of such writ of attachment (warrant), file in the court aforesaid an affidavit . . . setting forth the amount of rent sued for over and above all offsets and counterclaims, and a brief description of the leased premises, . . . and shall execute a bond conditioned," etc.

Sec. 1411. "Upon the filing of such affidavit and bond, it shall be the duty of the court wherein the same is filed to issue a writ of attachment to the proper person, commanding him to seize the property of the defendant not exempt," etc.

Sec. 1412. The officer shall "seize the property of such lessee not exempt from execution, or as much thereof as shall be of value sufficient to satisfy such debt, costs, and reasonable attorney's fee, and to keep the same until the determination of the action pending between the lessor and lessee," unless the property is sooner released as provided in the section.

Sec. 1413 is to the effect that the property may be released by the execution of a bond.

Section 1414. "All property, including growing and harvested crops and all ore mined or upon the premises, or so much of such property as may be necessary to pay the amount of rent due and costs, shall be liable to sale to enforce the payment of the lien hereby created."

Pursuant to the foregoing provisions respondents in connection with their complaint also filed an affidavit in the district court, and that court directed that the writ of attachment contemplated by the statute issue. Such a writ was accordingly issued directed to the sheriff of Salt Lake County, who duly executed the same by taking into his possession a large amount of furniture and household goods used in the building which was erected on the leased premises. The writ of attachment was levied on the 17th day of March, 1909, and on the 25th day of that month the intervener, appellant here, served a written demand upon the sheriff, demanding the return of the property taken by him under such writ to her; she claiming to be the owner thereof. Upon the demand being refused, she, after obtaining leave from the court, filed her complaint in intervention, in which she alleged that she was the owner of the attached property, and with great particularity pleaded the sources of her title. She also alleged the value of said property to be $7000, and, further, that some other parties claimed some interest therein whom she also asked to be made parties to the action. She

prayed judgment that she be declared to be the owner of said property, and that, if possession thereof could not be given to her, she recover judgment against respondents for the sum of $7000, the alleged value thereof. Respondents demurred to the complaint in intervention upon two grounds: (1) That neither the intervener nor any of the parties mentioned in her complaint whom she alleged claimed some interest in the attached property were proper parties to the action; and (2) because the complaint of intervention did not state a cause of action against respondents, or either of them. The demurrer was, however, withdrawn, and the respondents answered the complaint in intervention. In their answer they set up much affirmative matter in defense to appellant's claims. The other parties named in the complaint in intervention also appeared and denied generally the allegations of said complaint. The defendant Hechler filed a general demurrer to respondent's complaint, which was overruled, and he made no further defense to the action. When the case was called for trial upon the complaint in intervention and respondents' answer thereto, they asked leave to amend the prayer of their complaint by striking therefrom that portion which we have italicized, and in connection therewith moved that the complaint in intervention be dismissed for the reason that the intervener had shown no right to intervene in the action. The court granted respondents' request to amend the prayer as aforesaid, after which he also granted the motion to dismiss the complaint in intervention, and entered judgment against the appellant, dismissing her complaint, and she alone appeals from the judgment.

The only errors assigned are:

That the court erred in granting leave to amend respondents' prayer as stated, and in dismissing the complaint in intervention. For the purposes of this decision we shall treat the respondent's motion to dismiss the complaint in intervention as a general demurrer, for such is clearly its legal effect.

The court did not err in granting leave to amend the prayer of respondent's complaint. The averments in the

complaint clearly show that the action was based on the several sections of the statute quoted above. The lien referred to in the prayer is given by said statute, and so is the relief which respondents were entitled to in the action. The court, therefore, could not create a lien nor grant any other relief than that mentioned in the several sections of the statute aforesaid, and on which the action was predicated. The general prayer was therefore sufficient. Nor did the amendment of the prayer change the nature of the action, nor in any way affect the rights of respondents or of appellant. What was allowed to be done by the court with respect to making the amendment was harmless.

The only other question is:

Did the court err in dismissing the complaint in intervention for the reasons stated in the motion? We confess that in view of the conflicting decisions of the courts the question is one that is not entirely free from doubt. Counsel for appellant have cited a number of cases in which, they contend, it has been held that, in an action which is aided by attachment under which property is taken which is claimed by a third person, such claimant has the legal right to intervene in such action to protect his property. Upon the other hand, counsel for respondents have also cited a number of cases in which, they contend, the courts have held that the mere fact that A.'s property is taken on a writ of attachment in favor of B., in an action pending between B. and C., does not authorize A. to intervene in such action for the purpose of claiming his property. It cannot be gainsaid that there are cases which clearly sustain the contentions of both counsel. Among those cited by appellant's counsel are: *Horn v. Volcano Water Co.,* 13 Cal. 62, 73 Am. Dec. 569; *Speyer v. Ihmels,* 21 Cal. 280, 81 Am. Dec. 157; *Davis v. Eppinger,* 18 Cal. 378, 79 Am. Dec. 184; *Potlatch Lumber Co. v. Runkel,* 16 Idaho, 192, 101 Pac. 396, 23 L. R. A. (N .S.) 536, 18 Ann. Cas. 591. Among those cited by respondents' counsel are: *Lewis v. Harwood,* 28 Minn. 428, 10 N. W.

586; *Danker v. Jacobs,* 79 Neb. 435, 112 N. W. 579; *Meyer et al. v. Black,* 4 N. M. (Gild.) 352, 16 Pac. 620; *Loving v. Edes,* 8 Iowa, 427. There are a number of cases that might be added to either one of the foregoing lists; but it is deemed quite unnecessary to do so. Neither do we deem it necessary at this time either to collate or review the cases upon this subject. Any one who desires to examine the cases upon the question, however, will find that about all of them have been collated, and to some extent reviewed, in a note to the case of *Potlatch Lumber Co. v. Runkel,* 23 L. R. A. (N. S.) 536. We remark further that it is quite needless to attempt to harmonize many of the decisions. It is also true that the provisions of our statute on intervention are precisely the same as were those that the courts passed on in all of the foregoing cases, except, perhaps, in the case of *Loving v. Edes, supra.* That case was decided in 1859, at which time, it seems, the statute permitting intervention was not in force in Iowa. See. Rev. of Iowa, section 2930, and *Taylor v. Adair,* 22 Iowa, 279-283. It is in the latter case in which Mr. Justice Dillon states the true doctrine with respect to the right of intervention. The case of *Loving v. Edes* is not mentioned in *Taylor v. Adair,* which is due, perhaps, to the fact that the statute was not in force when the first case was decided. In view of the diversity of opinion among the courts upon this subject, and for the reason that the question is one of first impression in this jurisdiction, it becomes our duty to follow the rule which in our judgment accords best with the true spirit of our Code, and the one which in the long run is better adapted to reflect justice upon those who may have occasion to protect their property rights in our courts of record.

Upon questions like the one now confronting us, we are required to give full force and effect to all provisions found in our Code. Section 2489, to which we have called attention upon other occasions, cannot be ignored. That section, so far as material here, provides:

"The Revised Statutes establish the law of this state respecting the subjects to which they relate, and their provi-

sions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice. Whenever there is any variance between the rules of equity and the rules of common law, in reference to the same matter, the rules of equity shall prevail."

If we should blindly follow the decisions of the courts of other states where such decisions vary from our statutes, then we would be declaring the law of those states rather than the law as it is found in our own statutes. If it becomes necessary in furtherance of justice to give the provisions of the Code a liberal construction and application, we are bound to do so, and, in case the courts of other states have given similar provisions a strict construction or application, we are not bound to follow the construction of such courts.

The Supreme Court of Idaho, in the latest case upon the question, namely, in the case of *Potlatch Lumber Co. v. Runkel, supra,* has practically followed the rule we have just announced. In that case Mr. Justice Ailshie went into the subject at some length. He treats it with his usual care, clearness, and thoroughness, and, after having done so, he and his associates arrived at the conclusion that the true spirit of the Idaho Code (which is the same as ours) is better subserved by adopting the more liberal rule contended for by counsel for appellant than to adopt the one insisted upon by counsel for respondents. After careful consideration and reflection we have become convinced that the conclusions reached by the Supreme Court of Idaho are sound. The prevailing, and practically the only, reasons that are advanced by the courts who deny the right of intervention in cases where the property of a third person is attached are:

(1) That in actions at law based on personal obligations, where such actions are aided by an attachment, the "matter in litigation" referred to in the statute is the personal obligation of the defendant; and (2) that, in case property is attached in such an action which is claimed by a third person, such person is not affected or bound by the judgment in the action, but may bring an independent action, either in replevin to recover the specific property, or sue in trover for

its conversion, and obtain judgment for its value. While the foregoing, as abstract statements, may be correct, yet the results that have been declared upon them by some of the courts seem to us to be entirely too narrow, and fail to reflect justice. When an action is aided by an attachment which is levied on property belonging to a third person, such third person's property rights are directly invaded by that action. The primary cause of this invasion cannot be said to be merely the levying of the writ of attachment; but it must be traced back to the planting of the action. While the levy constitutes the immediate cause, yet the bringing of the action accompanied by the affidavit upon which the writ of attachment is based constitutes the real cause of the interference with another's property rights. Moreover, the very purpose of attaching the property is to satisfy the claim sued on, and, under certain circumstances, where the defendant cannot be personally served with process, the taking of the property may be the only means of conferring jurisdiction on the court to proceed to judgment in the action. Nor is it a good answer to say that the act of taking the property under the attachment is merely the act of the officer. The officer acts by virtue of the writ, to be sure; but the writ is based upon the affidavit, and without a pending action neither the affidavit nor the writ would have any legal force or effect whatever. It is reasonably clear, therefore, that the attachment cannot be considered as a matter or thing entirely apart from, or independent of, the action; but it must be considered as directly related to it, or as being an integral part thereof. While, in our judgment, the foregoing statements may be applied to attachments generally, they nevertheless apply with much greater ·force to attachments issued under our statute in favor of lessors against their lessees. In such cases it is not a personal obligation coupled with some unlawful act of the lessee which alone gives the right to attachment; but the right thereto is based on the relation existing between lessor and lessee. It is the relation which creates the lien, and the action is commenced, and the attachment is issued, and the property is taken for the sole purpose of making the lien ef-

fective. Indeed, in some states, under statutes creating a lien in favor of lessors similar to ours, the courts have held that in such actions a personal judgment is improper, and that the relief must be limited against the attached property. See *Triest v. Watts & Bro.,* 58 Ga. 73; *Argo v. Fields,* 112 Ga. 677, 37 S. E. 995. The foregoing cases were based on the Code of Georgia, vol. 2 sections 2795-2800. While we do not wish to be understood as holding, or even intimating, that a landlord in his jurisdiction may not waive his lien, and sue the tenant, and recover a personal judgment against the latter, yet it is very clear that, under our statute (Comp. Laws 1907, section 3064), the lessor cannot sue out an attachment against the lessee, and attach specific property, so long as the lesser has a lien on such property under the several sections of our statute hereinbefore set forth. Under the provisions of section 3064, the lessor is prohibited from obtaining an attachment for the very reason that he is given a statutory lien under the landlord's lien act to which we have referred. We mention this only for the purpose of showing that, in cases where the lessor sues the lessee for rent in arrears, and in that suit seeks to enforce his lien by the attachment provided for in the statute creating the lien, the attachment may be said to be so related to the obligation sued on that it really is a part of it. It seems to us, however, that, where the bringing of an action results in interfering with another's property and property rights, it does not lie in the mouth of the plaintiff in the action to say to the person whose property rights are interfered with, when the latter seeks to intervene in the action to protect his rights in a law-abiding manner: "You may not interfere in my action. It is true that I have caused your property to be taken for the purpose of selling the same, and applying the proceeds thereof to the payment of any judgment I may ultimately obtain in the action; but, if you object to my interference, you may sue me by bringing an independent action." Why should the injured person be driven to an independent action when his rights can be determined and protected in the pending one? But, as we have pointed out one of the reasons assigned by

the courts why intervention is not proper in such cases is that the person whose property is taken is not bound by the judgment that may be rendered in the pending action. This, no doubt, is true; but, if such person were bound by such judgment, then he would not only be a proper party to the pending action, but he would be a necessary, or what is termed an indispensable, party, and the court could not properly proceed to render final judgment without bringing him into court. Under such circumstances it would be the duty of the court to order him to be made a party to the action, and not wait till he asked to intervene.

As we understand the purpose of the statute relating to intervention, it is not intended to be applied only where a third person may have such an interest in the subject of the action which makes him an indispensable **3, 4** party; but the statute applies where such third person at some stage of the proceeding before trial is shown to have an interest which would make him a proper party. To illustrate: Suppose in this case, after appellant had made her demand for the return of the property, the respondents had come into court and had set up the facts that they claimed the property under their lessor's lien and attachment; further, that the appellant also claimed it as her own, and they, for that reason, asked the court that she be made a party defendant to the action, and that she be required to set forth her claim of ownership. Would not the appellant have been a proper party then? The statement answers itself. If, therefore, by reason of her claim it would have been proper to make her a party to the action upon respondents' request, why could she not, upon showing the same state of facts, come into the action as a proper party upon her own motion? Again, in case she had been served with process upon respondents' application, and she had failed to appear and answer their complaint against her, would she not have been bound by the judgment, in case it was held she had no right to the property attached? The answer is obvious. In case respondents had proceeded to make her a party to the action, would her contention that she preferred to sue them

in an independent action have been of any avail to her? We think not. If it could not have availed her, why should it avail respondents? But let us assume that respondents had proceeded in equity to foreclose their lessor's lien, as they might have done notwithstanding the statute (2 Underhill, Landlord and Tenant, section 856), and in that action they should have disclosed that the appellant claimed the property upon which they also claimed a lessor's lien; would she then not have been a proper party to such an action, and would not the court have ordered that she be brought before the court so that her rights could be determined and adjudged in that action? But, if she had not been made a party to such an action, would any lawyer have entertained any serious doubt respecting her right to have intervened in the action for the purpose of having her claim to the property which was sought to be subjected to respondents' lien determined? We think not. The answer that the action would then have been in equity and therefore the equitable rules would have prevailed, is immaterial, since, under section 2489, *supra,* the equitable rules would have controlled in any event. We do not wish to be understood as holding that, where a party, as here, claims to be the owner of attached property, he may in any manner assail the regularity or validity of the attachment. With respect to the application of the right to intervene in actions generally, we think the true doctrine is stated by Mr. Justice Dillon in *Taylor v. Adair, supra.* It is there pointed out by the eminent jurist that the statute permitting intervention is remedial, and its provisions should be applied in furtherance of justice. If, therefore, a party is not an indispensable party, and his intervention would unduly delay a pending action, or if to permit him to intervene would unduly complicate the issues, and his rights can nevertheless be protected in an independent action, then his right to intervene should be denied. But such denial should be based upon the ground that it would be against justice, and not in furtherance thereof, since it would unduly delay a pending action, or complicate the issues to such an extent as might result in injustice. These observations are clearly in

accord with the spirit of our Code, and are as clearly in furtherance of justice. Why should the privilege of intervention be denied when intervention is manifestly in furtherance of justice?

Nor can the intervener, where he claims ownership of the property, be permitted to assail the regularity or validity of the attachment. He is not permitted to intervene for any such purpose. He is permitted to intervene upon the sole ground that he claims to be the owner of the attached property, and that his property rights are interfered with by the plaintiff in the pending action. His title or right to the property does not depend upon the attachment, and therefore he is not concerned whether the attachment is good or bad, regular or irregular. But he is interested and has a right to have his claim of ownership of the property to which the plaintiff in the action also claims to have some right settled at the earliest possible moment. It is only in this way that he may enjoy all of his property rights. Where there is a choice between actions or remedies, the one who interferes with another's property rights should not be permitted to choose the action or remedy, but the choice should be left with him whose rights are invaded.

To our minds there is, however, still another reason why intervention should be permitted as a matter of right in actions where third parties claim the attached property. Where a third person claims the property, the defendant in the pending action may also be directly interested. If it should develop that the attached property is not his, then the judgment against him cannot be satisfied out of the attached property; but that must be done in some other way. Suppose the tenant Hechler has other property which at no time was upon the leased premises, and which has not been attached, and it be finally determined that the property attached in the pending case, or a large portion of it, belongs to the appellant. In such event his other property not exempt from execution, if he has any, may be sold to satisfy the judgment. Hechler is therefore clearly interested in having the question of ownership determined at the earliest possible moment. If, there-

fore, ownership is permitted to be litigated in the pending action, the defendant may, in that action, resist the claim of ownership upon the part of the intervener; but, if the intervener, who claims to be the sole owner, sues the plaintiff in the pending action in an independent action for conversion or otherwise, then the defendant must either intervene in that action or institute some independent proceeding to determine his rights in the property. Why require all this circuity of action when ownership, or the claims of all who may have or claim to have an interest in the property, can be settled in one action? That statutes which are intended to regulate the practice or procedure of courts should receive a liberal construction, and that the courts, in their application, should continually keep in mind that the practical and utilitarian view is of more importance than the strictly technical one, is well illustrated in the case at bar. This case has been pending upwards of four and one-half years upon a mere question of practice, and both the respondents and appellant, in so far as their claims to the property are concerned, now stand just where they stood when the attachment was levied. No doubt the merits of the case could have been determined by the trial court in less time than was consumed by that court in determining the question of practice. If that court had heard the respective claims of the parties, and had entered judgment according to their rights as he found them to be, either one could have then exercised the right of appeal, and the whole controversy might have been determined long ago; while, as the case now stands, to do so may require several years further time. Such results clearly cannot be said to be promotive of justice.

In view of what has been said, we feel constrained to hold that, where A.'s property is attached in an action by B. against C., A., as a matter of right, may intervene in B.'s action, and in that action have determined his right to or interest in the property. While, as already indicated, there may be actions taken as a class where intervention may be proper, yet in a particular case the right to do so may not be absolute, but may depend upon whether

the intervention would either unnecessarily complicate the issues or greatly delay the final determination of the action. It is, however, not necessary at this time to point out when and under what circumstances the courts should regulate the privilege. It is time enough to do so when the occasion arises. The claim of complicated issues or delay has no application to cases where one merely seeks to protect his rights in attached property. In such cases the party who under oath claims that his rights are being interfered with should have the choice of electing whether he will insist upon his rights in the pending action in which his rights are being assailed by the attachment, or whether he will bring an independent action. So far as delay in such action is concerned, it would seem that final determination would be expedited by the intervention rather than delayed, since, if the intervener should bring an independent action to recover his property, further proceedings on the attachment must be suspended until the independent action is determined, or the plaintiff in the pending action must protect the property rights of the intervener by giving bond.

The judgment is therefore reversed, and the cause remanded to the district court of Salt Lake County, with directions to set aside the judgment dismissing the complaint in intervention, and to reinstate said complaint, and to proceed to hear and determine the case in accordance with the views expressed in this opinion. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.