BRICKYARD HOMEOWNERS' ASSOCI-
ATION MANAGEMENT COMMITTEE,
Plaintiff and Respondent,

v.

GIBBONS REALTY COMPANY, Harold
N. Wilkinson, Brickyard Associates and
William A. Gibbons, Defendants and Ap-
pellants.

No. 17776.

Supreme Court of Utah.

July 7, 1983.

David E. Leta and Jim Dalton Dunn, Salt Lake City, for defendants and appellants.

Gary A. Weston and Richard K. Hincks, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

We granted an interlocutory appeal on petition by the defendants when their motion to dismiss for lack of standing was denied by the court below. They challenge plaintiff's right to sue under U.C.A., 1953, § 57–8–33. This is a case of first impression in our forum.

Plaintiff constitutes the management committee of the Brickyard Homeowners' Association created pursuant to the Utah Condominium Ownership Act, § 57–8–1, et seq. and the declaration and by-laws of the Brickyard Condominiums. Its complaint comprises four causes of action or claims against the defendants, who designed, constructed, marketed and sold the condominiums. The first claim alleges damages for negligent design and workmanship affecting the common areas as well as the "A" and "C" units of the condominium project. The second claim includes breaches of implied warranty of fitness for proper use of the "A" and "C" units and common area facilities as well as of water rights for the fresh water ponds in the common areas. The third claim states a breach of express warranty with respect to the glass installation in the atriums in the "C" units. Under the fourth claim the defendants are charged with falsely representing that the glass installation in those atriums were double pane insulated, and that walkways around the reflection ponds and other common areas would be landscaped and fully maintained.

Defendants' motion to dismiss plaintiff's complaint for failure to state a claim for relief and for lack of standing and/or capacity to sue was denied and a petition for interlocutory appeal was subsequently

granted by this Court. The defendants ask that we direct the district court to order plaintiff to bring its complaint as a class action, or in the alternative to join the 108 unit owners as necessary parties. Defendants further ask for a dismissal of all but the common area claims of the first claim on the ground that management committee lacks standing to sue on them.

## I.

A 1961 amendment to the National Housing Act[1] authorizing F.H.A. insurance on condominium mortgages launched the large-scale development of a new version of home ownership theretofore virtually unknown in the continental United States of America.[2] As shrinking land and expanding population centers in the metropolitan areas of the United States combined to render condominium ownership a desirable alternative to conventional home ownership, so arose the need for the protection of prospective owners and for the financial backing by lenders. The 1961 amendment broke the ground to allow for both. The F.H.A.'s model statute for the creation of apartment ownership was quickly fashioned to serve as a model for those jurisdictions that wished to avail themselves of appropriate measures to implement this new form of ownership.

> The ... suggested form of statute is intended as a guide to persons or groups interested in legislation which would permit § 234 (condominium) mortgage insurance in a particular jurisdiction. The model statute represents what F.H.A. regards as the best framework within which to obtain the objectives of condominium ownership. However, in order for this statute (or any variation thereof which would achieve the same objectives as this model) to be legally effective, it is advisable that the sponsors of such legislation analyze the other laws of their jurisdiction (e.g. statutes concerning taxation, real property, mortgages, future interests, recording, subdivision platting, liens, insurance, zoning, etc.) to determine in what way such statutes may have to be amended to permit and establish the condominium objectives of the model statute.

Rohan Reskin, supra, Vol. 1 A, Appendix B–3.

Utah was among the early states to adopt a closely parallel version of the F.H.A. model and in 1963 enacted what is popularly known as the Utah Condominium Ownership Act, codified under U.C.A., 1953, § 57–8–1, et seq. We agree with the defendants that Utah legislators specifically evidenced an intent to satisfy doubts expressed by the F.H.A. in financing condominium ownership. Lenders needed guidelines to assure a prospective owner continued protection of his investment and thus the ultimate returns to the lender. That was the rationale behind both the amendment of the National Housing Act and of the subsequent enactment of the Utah Condominium Ownership Act. Moreover, it should be presumed that the F.H.A. prepared the model statute with the aim of achieving uniformity through adoption by the various states of statutes patterned after that model. It has been said that the influences of statutory models tend to establish "a general body of legislative jurisprudence not wholly unlike the general principles of the common law." Sutherland Statutory Construction, Vol. 2 A, § 52.01 (1973). That body of legislative jurisprudence becomes our beacon when we examine our sister forums to guide us in deciding the question before us.

A condominium owner is the holder of a hybrid real property interest consisting of "two distinct tenures, one in severalty and the other in common; both types, although well established separately, are inseparably joined in a condominium." Annot., 69 A.L.R. 3rd 1148, 1149 (1976). It is the inseparability of this interest that makes it a creature unknown to common law and thus amenable to statutory clarification. With

---

**1.** 12 U.S.C. 1715y, § 234.

**2.** See generally Rohan Reskin, Condominium Law and Practice Forms, Vol. 1, Part 1, Ch. 2 (1982).

this predicate in mind we must interpret the Condominium Ownership Act in its entirety to construe § 57–8–33 dealing with actions brought by the manager or management committee (hereinafter management committee). "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another ..." Sutherland, supra, § 46.06. See also *Andrus v. Allred,* 17 Utah 2d 106, 404 P.2d 972 (1965); *Johnson v. State Tax Commission,* 17 Utah 2d 337, 411 P.2d 831 (1966); *Millet v. Clark Clinic Corp.,* Utah, 609 P.2d 934 (1980); *Christensen v. Industrial Commission,* Utah, 642 P.2d 755 (1982).

## II.

U.C.A., 1953, § 57–8–33 provides as follows:

> Without limiting the rights of any unit owner, actions may be brought by the manager or management committee, in either case in the discretion of the management committee, on behalf of two or more of the unit owners, as their respective interest may appear, with respect to any cause of action relating to the common areas and facilities or more than one unit. Service of process on two or more unit owners in any action relating to the common areas and facilities or more than one unit may be made on the person designated in the declaration to receive service of process.

■ Prefatory to our interpretation of this section we note the directive that we construe statutes liberally with a view to effect their objects and to promote justice. U.C.A., 1953, § 68–3–2. Upon a question of the first impression such as this, it is our duty to accord that section effect. *Houston Real Estate Inv. Co. v. Hechler,* 44 Utah 64, 138 P. 1159 (1914). The language of § 57–8–33 is directory, not mandatory. Actions *may* be brought by the manager or management committee, in the discretion of the management committee. Where "the language of the statutory provision regarding the person to bring suit is directory ...

the party in interest may sue in his own name." 59 Am.Jur.2d, Parties § 24, citing *Woodcock v. Board of Education,* 55 Utah 458, 187 P. 181 (1920). In that case the plaintiff school teacher, who had been awarded damages by the Utah Industrial Commission, sued her employer to enforce payment of that award. The statute then in existence read that the compensation award "may be recovered in an action in the name of the state for the benefit of the person ... entitled to the same." *Id.* 187 P. at 182. The defendant in that case argued that plaintiff should have joined the state in the action. This Court found that "[a]fter considering all the provisions of the Act in connection with other statutory provisions, we are of the opinion that it was not the intent or purpose of the Legislature to prevent the injured employee from prosecuting an action or proceeding in his own name if he felt so disposed. The language quoted from the section is directory rather than mandatory." *Id.* 187 P. at 182. That holding, though dealing with the antithetic situation, applies with equal force to the language under review here.

■ Section 57–8–33 provides for a new and cumulative, not for an exclusive remedy, without limiting the rights of any unit owner to initiate suit on his own behalf. "There is a presumption that a statute is consistent with the common law, and so a statute creating a new remedy or method of enforcing a right which existed before is regarded as cumulative rather than exclusive of the previous remedies." Sutherland, supra, at § 50.05. That presumption is reinforced by the language contained in § 57–8–33 which expressly reserves the rights of the unit owners and merely allows representation by the management committee on behalf of *two or more* unit owners. Only two common law principles are specifically excluded under the Condominium Ownership Act: the rule against perpetuities and the rule restricting unreasonable restraints on alienation. Section 57–8–28. Section 57–8–35 again emphasizes the additional and supplementary nature of the Act to other provisions of law, but specifically

subordinates the latter where they are in conflict with the provisions of the Condominium Ownership Act.

■ The defendants urge that § 57–8–33 is an infringement upon our exclusive rule-making power. Section 78–2–4 confirms this court's rule-making power, and we have exercised such power since 1943. See Charles Alan Wright, "Procedural Reform In The States," 24 F.R.D. 85, 117. But we have also recognized that this power is narrowly circumscribed and that those rules "may not affect substantive rights of a litigant . . ." *Monter v. Kratzers Specialty Bread Co.,* 29 Utah 2d 18, 21, 504 P.2d 40 (1972). In support of their contention defendants cite *Avila South Condominium Assoc. v. Kappa Corp.,* Fla., 347 So.2d 599 (1977). The relevant portion of the Florida statute attacked in that case (F.S.1975, § 711.12(2)) read: "[T]he association shall have authority and the power to maintain a class action . . ." The court in that case correctly labeled the establishment of such procedural vehicle "an impermissible incursion by the legislature into the exclusive prerogative of this Court to adopt rules for 'practice and procedure in all courts.'" [Citation omitted.] The court then proceeded to juxtapose substantive and procedural laws:

> Practice and procedure encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for the invasion. "Practice and procedure" may be described as the machinery of the judicial process as opposed to the product thereof.

*Id.* at 608.

There is nothing in § 57–8–33 that prescribes the course, form, manner, means, method, mode, order, process or steps by which the management committee may enforce the rights of two or more unit owners. Instead it is clearly a statute of substantive rules and principles "which fix and declare the primary rights of individuals as respects their persons and their property." *Avila,* supra, at 608.

This conclusion on our part results from an examination of the totality of the powers created by the Condominium Ownership Act and vested in the management committee. What follows are illustrative excerpts: All agreements, decisions and determinations lawfully made by the management committee are binding on the unit owners. Section 57–8–34(2). Failure on the part of any one unit owner to comply with the various covenants, by-laws and/or house rules gives the management committee the right to sue that unit owner for damages or injunctive relief. Section 57–8–8. The management committee has the irrevocable right of access to all units during reasonable hours as necessitated by common area problems. Section 57–8–7(6). It has the duty to keep books of receipts and expenditures affecting the common area problems. Section 57–8–17. Labor performed or materials furnished for the common areas at the behest of the management committee shall be deemed to be performed or furnished with the express consent of the unit owners and are lienable against them. Section 57–8–19. Liens for non-payment of common expenses may be enforced by sale or foreclosure of the defaulting owner's unit, again by the management committee, and the Act even gives it the power to bid at such sale and to hold, lease, mortgage and convey the unit. Section 57–8–20. Property insurance may be taken out in the name of the management committee which acts as trustee for the unit owners. Section 57–8–29.

These powers of the management committee, when viewed in the context of the entire Condominium Ownership Act, are inversely proportionate to the restrictions placed upon the individual unit owners by the Act. Where the rights of the unit owners are completely unfettered, the management committee has no powers. Where, by virtue of the hybrid nature of the common ownership, the rights of the individual unit owner have been abridged, those of the management committee to act on his behalf have been comparably enlarged. The conclusion is peremptory: Section 57–8–33 affects the substantive rights of the unit own-

ers and does not constitute an improper incursion by the Legislature into the rules-making power of this Court.

■ Having decided that § 57–8–33 endows the management committee with the statutory authority to bring suit on behalf of two or more unit owners, we now focus our attention upon the procedural propriety of plaintiff's action. Rule 17(a) of the Utah Rules of Civil Procedure, which is identical to Federal Rule 17(a),[3] in pertinent part reads as follows:

> An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or *a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought;* [Emphasis added.]

Identity in language presumes identity of construction, so that we look to federal procedural law for guidance. Rule 17(a) of the Federal Rules of Civil Procedure requires that "[a]n action shall be consummated in the name of the party who, by the substantive law, has the right sought to be enforced." 3A J. Moore, Moore's Federal Practice § 1707 (2d ed. 1982). Likewise, authority given to the entities enumerated in Rule 17(a) "to sue in his own name without joining with him the party for whose benefit the action is brought, is not an exception to the real party in interest provision, but the specific instances enumerated are merely illustrations of the rule inserted to insure that the 'real party in interest' would not be confined to the persons beneficially interested." *Galarza v. Union Bus Lines, Inc.,* 38 F.R.D. 401, 405 (1965), aff'd. sub nom. *Union Bus Lines, Inc. v. Galarza,* 369 F.2d 402 (1966).

The defendants' main argument is concerned with the management committees' lack of title, and thus of standing, to bring suit. The answer is succinctly stated in 59 Am.Jur.2d, Parties § 24: "Where a person is expressly authorized by statute to bring a particular action, his right of action arises directly out of the statute, and he needs no

*title* under the substantive law to authorize such suit." [Emphasis added.] Statutory authority is validated by stare decisis in various jurisdictions. Wrongful death actions are statutorily permitted to be brought by the administrator, who has no beneficial interest in the outcome. *Del Valle Rodriguez v. Wheeler,* 16 F.R.D. 103, 104 (1954); *Boeing Airplane Co. v. Parry,* 322 F.2d 589 (10th Cir.1963). Particularly noteworthy for purposes of standing in this case is *Owens v. Tiber Island Condominium Ass'n.,* 373 A.2d 890 (D.C.1977). The District of Columbia, in following the F.H.A. model, adopted a statute very similar to Utah's § 57–8–33. D.C.Code 1973, § 5–924(a) reads as follows:

> Without limiting the right of any co-owner, actions may be brought on behalf of two or more of the unit owners, as their respective interests may appear, by the manager, or board of directors, or of administration with respect to any cause of action relating to the common elements or more than one unit.

*Id.* at 894.

In that case an objection to a suit brought by the association's board of directors was voiced by individual unit owners who claimed that the board was not authorized to file a suit against the Washington Metropolitan Area Transit Authority protesting construction of a subway in the area where the condominium was located. The board reached a settlement agreement and assessed legal fees against the individual owners. That assessment triggered the ensuing action. The court found that the lawsuit which had been brought by the board related to the common elements or more than one unit of the condominium, that the suit had been properly brought and that the unit owners were therefore liable for the legal fees. See also *Siller v. Hartz Mountain Associates,* 184 N.J.Super. 450, 446 A.2d 551 (1981).

Plaintiffs "commenced this action on behalf of the members of the Brickyard Homeowners' Association under and by vir-

---

**3.** Except for substitution of references to Utah for references to the United States.

tue of the authority of § 57–8–33, *Utah Code Ann.*" Paragraph 3, complaint. Their four claims, as delineated above, involved all the "A" units, all the "C" units, fresh water ponds in the common areas, as well as defective installation of electrical equipment which affected "one particular unit and home owner in *each* building." [Emphasis added.] Paragraph 7(h), complaint. The complaint thus squarely falls within the statutory prescription that action be brought on behalf of two or more unit owners and that it relate to the common areas and facilities or more than one unit. We have carefully reviewed the cases submitted by defendants and find that they are all distinguishable. *Royal Bahamian Ass'n, Inc. v. Morgan*, Fla., 338 So.2d 876 (1976) and *Reibel v. Rolling Green Condominium A, Inc.*, Fla., 311 So.2d 156 (1975) were brought under the unconstitutional Florida statute. Also, the association brought the action in its own name, claiming ownership, not representation of the condominium owners. In *Hendler v. Rogers House Condominium, Inc.*, Fla., 234 So.2d 128 (1970) the association had no statutory authority, nor was it clear whether the declaration and by-laws gave the association standing, as the by-laws were not attached to the complaint. In *Summerhouse, etc., v. Majestic Savings & Loan*, 44 Colo.App. 495, 615 P.2d 71 (1980) suit was brought by the association on its own behalf, and there was no such authority granted under the declaration and by-laws.

In sum, we find that the legislative intent clearly points to the vesting of substantive rights in the management committee. We endorse the rationale propounded in *Siller*, supra, 446 A.2d at 554, where the court summed up the purpose of a similar statute:

> Realistic and practical application of the statutory scheme requires that the language used in and pursuant to the statute be liberally construed to include the assertion and settlement of claims on behalf of unit owners against the developer with respect to common elements. To deprive the association of the rights to act on behalf of all unit owners in such matters would leave the responsibility for and

authority over the common elements fragmented and thus make vindication of the common rights highly uncertain, difficult and burdensome. The statute is clearly designed to avoid just that result.

## III.

Having decided that the management committee has the statutory right to bring suit, we next turn to defendants' contention that permitting the management committee to sue without making it a class action or joining the unit owners as necessary parties will expose the defendants to substantial risk of multiple and inconsistent judgments. We see no basis for any concern. If any unit owner represented here (and the management committee purports to bring this action on behalf of all 108 owners) subsequently seeks to raise the same issues which are now advanced by the management committee, res judicata would protect these defendants from that subsequent litigation. Where the management acts as the legal representative with respect to the claims here litigated, present and successive owners asserting identical claims would be barred from subjecting the defendants to multiple suits.

Defendants' reliance on *Ruffinengo v. Miller*, Utah, 579 P.2d 342 (1978) is misplaced as there the plaintiff and the plaintiffs in the previous action were owners of different lots. Conversely here, the unit owners represented by the management committee have an undivided interest in the common areas and several interests in the "A" and "C" units. All present and future owners with an undivided interest in the common areas and all present and future owners of the several interests in the "A" and "C" units would be precluded from reasserting the issues here litigated on these properties.

Defendants urge that under the literal wording of § 57–8–33 a unit owner who is dissatisfied with the outcome of a suit brought on his behalf by the management committee may initiate a subsequent action in his own name on the same claim. De-

fendants point to the language of the statute:

> Without limiting the rights of any unit owner, action may be brought by the manager or management committee ... on behalf of two or more of the owners. . . .

We do not interpret the statute as authorizing claims to be twice litigated. A reasonable interpretation is that the Legislature was attempting to give the unit owner at the outset a choice as to whether to bring his suit individually or whether to allow the management committee to bring his suit in connection with other unit owners. In many cases the unit owners are best represented by the management committee since the amount of damage suffered to each individual owner may not warrant the legal expense each would incur in seeking redress. But the Legislature in extending this beneficial option to unit owners did not intend to authorize both means of suit in contravention of the principle of res judicata.

In a nutshell, inasmuch as res judicata could be relied upon in any subsequent action by the defendants, we see no basis for concern that they will be exposed to multiple and inconsistent judgments. Nothing would be gained by forcing a class action upon the Brickyard Condominium unit owners nor in requiring that each of them be made parties as the statute offers a less burdensome alternative for legal representation.

## IV.

Finally, we must determine whether the management committee has standing to sue on the particular causes of action stated in the complaint, or whether some of the claims have an individual nature which prevents the committee from suing on behalf of the unit owners collectively.

1. The first claim alleges negligence and failure to perform specific work in a good and proper workmanlike manner. Of the enumerated items all but four concern "common areas and facilities" as defined in § 57–8–3(5). Three of the remaining four items concern improper glass and window flashing installation, as well as defective design and construction of the rooms housing water heaters in all of the "C" units. The last item concerns the improper design and construction of floors in second level units causing acoustical problems in all of the "A" units. The first claim thus falls squarely inside the perimeter prescribed by § 57–8–33, permitting the management to sue with respect to any cause of action relating to the common areas and facilities or more than one unit.

2. Under the second claim plaintiff alleges breach of implied warranty of fitness for proper use with respect to the design and construction of all of the "A" and "C" units and common area facilities, and with respect to the water rights for the fresh water ponds in the common areas. We have heretofore reviewed an action brought by a management committee for breaches of express and implied warranties and fraud. *Management Committee of Greystone Pines Homeowners' Ass'n. v. Greystone Pines, Inc.*, Utah, 652 P.2d 896 (1982). Defendants' only objection to this claim is that the management committee "does not have an enforceable interest in the claim." We have heretofore in this opinion pointed out that that objection is not valid. Our Legislature gave the management committee broad latitude to bring suit with respect to *"any cause of action."* Section 57–8–33. The management committee is therefore cloaked with the statutory right to sue the defendants for breach of implied warranty of fitness as alleged in the complaint.

3. Defendants' argument that the management committee cannot sue under a theory of express warranty is advanced under similar theories as that against plaintiff's second claim. We meet that argument with similar answers.

4. Finally, the defendants contend that the claim of misrepresentation alleged in the fourth cause of action may not be brought by the management committee inasmuch as the claim is based upon each unit owner's negotiations with defendants, and

that individual inquiry is necessary to determine the reliance of each owner on any misrepresentation. We again reiterate that § 57–8–33 is without restriction as to the type of action that may be brought by the management committee. Moreover, at this juncture in the lawsuit where only the plaintiff's complaint has been filed, the record affords us no clue as to what means the plaintiffs intend to use to prove the alleged misrepresentation and reliance. It is entirely conceivable that the plaintiffs intend to show a misrepresentation in a sales brochure or other advertising material which was presented to each of the unit owners when he expressed an interest in purchasing a unit, or by some other means which was common to all purchasers. The plaintiffs in their brief hint that this will be their approach since they state that proof of misrepresentation to one owner will be proof to all. In that event, the testimony of all the complaining owners may not be necessary. However, we envision no insurmountable problems in the trial of this case even if the testimony of all the complaining owners is required. The allegations of misrepresentation relate only to the glass windows in the atriums in the "C" units and to the walkways around the reflection ponds in the common area. Being so limited, the allegations would not require the testimony of more than a small fraction of the total number of unit owners.

What we have just said with regard to the proving of the alleged misrepresentation is also true as to the proof of reliance of each unit owner on the alleged misrepresentation. The Supreme Court of California in a class action brought by consumers who had purchased frozen food and freezers from a common vendor, *Vasquez v. Superior Court of San Joaquin County,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (1971) dealt with a similar objection to the maintenance of that class action. The court denied the objection stating that it should "not be unduly complicated" for the consumers to sustain their burden of proving reliance as a common element since reliance upon false representations need not be shown by direct evidence. The court quot-

ed with approval from 12 Williston on Contracts, 3d Ed.1970, p. 840:

> Where representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that representations were relied upon.

*Id.,* 94 Cal.Rptr. at 805, 484 P.2d at 973. The court further observed that that rule was in accord with the Restatement of Contracts, § 479, Illus. I. *Id.* The court noted that such had been the law in California for many years and held that if the trial court upon trial finds material misrepresentations were made to class members, "at least an inference of reliance would arise as to the entire class. Defendants may, of course, introduce evidence in rebuttal." *Id.* The court analogized that case to certain federal class action cases in which stockholders alleged fraud on the basis of printed misrepresentations in a corporation prospectus. In those cases it was held that individual proof was not required to establish reliance by each stockholder.

## CONCLUSION

We have delineated the perimeters of authority granted the management committee by the Utah legislature and find that the section under attack is constitutionally sound. As stated above and on every point placed in issue herein, we see no barrier for the management committee to pursue its action against the defendants on all causes of action and remand the case for trial on the merits accordingly. Costs awarded to plaintiff.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.