BENJAMIN G. RAYBOULD, AND OTHERS, APPELLANTS,
  *v.* LEONARD G. HARDY, AND OTHERS, RESPOND-
  ENTS.

EDWARD ASHTON, AND OTHERS, APPELLANTS, *v.*
  LEONARD G. HARDY, AND OTHERS, RESPOND-
  ENTS.

JAMES LOWE, AND OTHERS, APPELLANTS, *v.* LEON-
  ARD G. HARDY, AND OTHERS, RESPONDENTS.

LEGISLATIVE POWER.—CONSOLIDATION OF SCHOOL DISTRICTS.—
   UNIFORMITY.—By act of legislative assembly, Laws of Utah,
   1890, section 100 *et seq.*, pages 128 *et seq.*, a board of education
   was established for Salt Lake City, and all the school property
   of the different school districts in said city was conveyed to
   and vested in the board of education in trust for the district
   schools of the city, and it was provided that all school districts

and offices of school trustees for said districts should thereupon cease to exist; *held*, that the Legislature had authority to abolish the school districts, and consolidate them into one and apportion the property, and that the same was a legislative question, the manner whereof was not reviewable by the courts, even if the rate was not uniform.

TAXATION.—SCHOOL PURPOSES.—ASSESSMENT ROLL.—In December 1889, under laws then existing, the tax-payers of a school district in Salt Lake City met together and levied a tax of one per cent. upon the assessment value of the property of the district for the year 1889, which would have raised a revenue of $5,500 for the district, but the assessor and collector extended the assessment upon the roll for the year 1890, wherein the values of property in the district were assessed much higher than in 1889; *held*, even if the statute provided that the school tax should be collected at the same time and in the same manner as county and territorial taxes, that the assessment should have been made upon the roll. for 1889, although county and territorial taxes were collected upon the roll for 1890.

ID.—CONSOLIDATION.—LEVY.—*Semble*, that where under existing laws a special school tax was voted by a school district of Salt Lake City in December, 1889, and by an Act approved March 13, 1890, all the school districts in said city were consolidated, and under it the school district went out of existence the last day of July, 1890, at which time the assessment roll was completed, and the taxes levied, the tax so collected belonged to the consolidated district as property of the particular school district.

APPEAL from a judgment upon demurrer of the district court of the third judicial district.

The complaint alleged that defendant Hardy was collector for Salt Lake City and as such claimed to be collector for the consolidated Salt Lake City school district; that the defendant, the board of education of Salt Lake City, and Joseph B. Walden, Salt Lake City treasurer, claimed to be entitled to the special school tax in dispute, and that Hardy was proceeding to collect

24

the tax, which had been voted in December, 1889; that at all times mentioned prior to March 13, 1890, there were twenty-one school districts in Salt Lake City, duly organized; that each one of said school districts owned property and owed debts, and all had levied special school taxes and had assessment valuations for 1889 and 1890 except two, which had levied no school tax at all; that in one district one and a quarter mills, in eight districts two and one-half mills, in three districts five mills, in three districts seven and one-half mills, in two districts ten mills, in one district twelve and one-half mills, on a dollar of valuation had been levied; that plaintiff owned certain lands in one district, upon which said taxes, which had been extended on the assessment roll of 1890, would be a lien; that the taxes were being collected for the benefit of the new consolidated school district, and not for the school districts by which they were levied; that the taxes not being levied by any uniform rule, were void, and would be a cloud upon plaintiffs' property; that said suit was brought for plaintiffs and whomever might join; and plaintiffs prayed that the collection thereof might be enjoined. Defendants demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action.

The statutes in force when the special school taxes were voted are sections 1915 and 1918, 1 Comp. Laws 1888, which are stated in the opinion of the court. Also section 1916, providing for the meetings to levy taxes and certifying of any rate of assessment to the county clerk; section 1917, making it the duty of county collectors to collect the tax; section 1919 which is as follows: "At the time of computing the tax in the county assessment roll, the county clerk shall compute the district school taxes of the several districts of the county, in which school taxes

have been levied. The county court shall sit as a board of equalization of district school taxes, and shall equalize in the same manner as now provided by law for equalizing Territorial and county taxes." The particular sections of the Act of 1890, p. 110, Laws of Utah, 1890, were those in Article XV, relating to schools in cities. Section 100, *et seq.,* made all cities of the first and second classes one school district, with a board of education, consisting of the mayor and elected trustees to be elected in a certain manner, and organized as provided. The city treasurer was made treasurer of the board. Sections 115 and 116 provided: " that at the expiration of the school year in 1890 (July 1st), all school districts, in cities included in this act (Salt Lake City being so included), shall cease to exist, and all school district offices · shall become vacant, on the organization of the board of education" (to take place before the last day of July); "that upon the election and qualification of the board of education for any city, 'the trustees of all school districts in said city shall convey and deliver all the school property of said districts to the board of education of said city; and the title to all such property, and all property hereafter acquired for school purposes in said city, shall be conveyed to and vest in said board of education, for the use of the district schools of said city; and all rights, claims, causes of action, to or for said property, or the use or income thereof; or for any conversion, disposition or withholding thereof or for any damage or injury thereto, shall at once vest in the board of education of said city, in trust for the use of the district schools of the city, and said board in the name aforesaid, may bring and maintain actions to recover, protect and preserve the property and rights of the district schools and to enforce any contract relating

thereto, and in its said name may sue and be sued in any court of law or equity."

Section 135, same act, provided: "Nothing in this act shall be construed as intended to abate, impair or invalidate any levy of taxes or assessment therefor, which has been or is now being made in any school district or county in this territory; and all such assessments shall be continued and completed and the taxes levied shall be collected in the manner provided by law."

Sections 2028 and 2029, 1 Comp. Laws 1888, provided that all taxes including special school taxes became delinquent October 31, and that the county clerk should attach his warrant to the roll delivered to the collector, commanding him to collect the amount of taxes therein set forth, extended on the roll, so much for territorial, so much for county, and so much for school taxes, and but one roll for each year was provided for.

*Messrs. Sutherland and Judd,* attorneys for the appellants.

*Mr. Robert Harkness, Mr. Parley L. Williams* and *Mr. Waldemar Van Cott,* for the respondent Board of Education.

*Mr. Walter Murphy,* for the respondent Hardy.

BLACKBURN, J.:

Up to March 13, 1890, Salt Lake City was divided into twenty-one school districts, each district having its own officers and the power to levy taxes for school purposes. The plaintiffs are tax-payers of district No. 11, as it existed up to and prior to March 13, 1890; and the trustees of said district were authorized to provide funds for the support of public schools in said district

under a statute then in force, as follows: "All school taxes, whether levied by trustees or by a special meeting called for that purpose, shall be computed from the valuations of the county assessment roll, and shall be levied during the month of April, 1886, and during the month of December of each year thereafter; and, within ten days after any such meeting shall have been held, the school trustees shall make a certified statement of the per cent. of the taxes so levied to the county clerk, and to the county assessor. The county assessor shall assess therefor, at the same time and in the same manner that he assesses for territorial and county taxes, and he shall give to district school tax-payers the same notices as are required by law to be given to tax-payers of territorial and county taxes." Section 1918, Comp. Laws 1888. It is also provided in section 1915: "Whenever it shall be necessary to raise funds to purchase, repair, or furnish school-houses, or for other school purposes, an estimate of the approximate cost thereof shall be made by the trustees, and the rate per cent. may be fixed at any sum, not exceeding two per cent. per annum, as shall be decided by a majority vote of the property tax-payers in said district present at a meeting called for that purpose, to be assessed and collected as a special tax upon all the taxable property of the district."

By the authority of these statutes, in December, 1889, the trustees of said district, at a meeting called for the purpose, estimated the needs of the district for school purposes for the coming year to be the sum of $5,500, which was received by the tax-payers at the meeting; and they estimated that one per cent. upon the assessment value of the property of the district for 1889 would raise the amount necessary, and voted the levy of a tax of one per cent., and the trustees duly certified the same to the county clerk and the county assessor. The assessor

and collector extended the tax upon the assessment roll of 1890, instead of upon that of 1889; and upon that roll the tax voted would amount to over $16,000.—vastly in excess of the amount needed; and the collector is now proceeding to collect the same.    The legislature of Utah Territory, at its session in 1890, passed an act abolishing the twenty-one school-districts in Salt Lake City, and consolidated them all in one district, and provided that the property of the several districts should belong to the consolidated district.    It also appears that the property of the districts is vastly unequal, and that some of them have taxes uncollected in large amounts, and may of them have no taxes levied, and almost no property of any kind.    These facts are alleged in plaintiffs' complaint, and they ask that the collection of this tax in district No. 11 be enjoined, and for general relief.    To the complaint the defendants interposed a demurrer, which was sustained, and the appellants appeal, and allege—

1. That this tax is void because it operates so unequally in the different parts of the city, as the law is that all taxes must be uniform.

It is conceded that the legislature has authority to abolish these districts, and consolidate them into one, and apportion the property.    How that apportionment should be made is a legislative question, and not for the courts; and, the legislature having acted upon that question, it is presumed that it did all that was necessary, and the court cannot interfere.    Hence this contention is untenable.    Cooley, Tax'n, p. 179, and following, and notes.

2. It is claimed by appellants that this tax was not fully levied, so as to cover property of the district, before it was abolished.    The district went out of existence the last day of June, 1890, and the assessment roll of that year was completed at that time, so that, even if the tax

was computed upon the assessment roll of that year, it was complete, and became a debt due district No. 11.

3. Appellants also contended that this tax was voted and levied upon the assessmant roll of the year 1889, and not upon that of the year 1890. We think this contention is tenable, and should be sustained. Under the statute, the trustees of the district made an estimate of the funds needed for school purposes, and reported to a meeting called for that purpose that $5,500 was needed, and upon the assessment roll of 1889 the tax-payers computed that a one per cent. levy would raise that amount, and voted that levy. They wanted $5,500, and they intended to levy that amount, and they voted a levy of one per cent., because, computed on the assessment roll of 1889, that would raise the amount needed. They had not in mind the assessment roll of 1890.

If that intention can be carried out by a reasonable construction of the statute authorizing the levy, without doing violence to its wording, we think it ought to be done. The statute provides the levy is to be made in December; that the trustees are to report the amount needed, and the tax-payers are to vote the per cent. necessary to raise that amount. In order to do that, the per cent. to be levied must be ascertained from the assessment roll of that year, not from that of the succeeding year, for it has not been made. It seems logically conclusive that the extension and collection of this tax so levied should be upon the assessment roll of the year in which the tax is levied. But the statutes say "the collector shall collect this tax at the same time and in the same manner," etc., "as the territorial and county taxes are collected." And it is said that this provision makes it conclusive that this tax should be computed upon the assessment roll of the succeeding year. Col-

lecting this tax at the same time can as well be done, computed upon the assessment roll of 1889, as upon that of 1890, and collecting it in the same manner only has reference to the mode of collection, as by distraint, suit, or the sale of property, and does not in any way determine how the amount of the tax is to be computed. Therefore no violence is done to the terms of the statute, if the amount of this tax is computed upon the assessment roll of 1889. We think that was the intention of the legislature, and certainly it was that of the tax-payers. If the amount of the tax is computed upon the assessment roll of 1890, the levy exceeds by $11,000 the amount intended to be voted by the tax-payers, and makes the amount to be collected over $16,000,—a pretty large amount for one school-district to pay. If this district had not been abolished, this excess of collection would have been for its benefit in the future; but now, if collected, it goes for educational purposes outside the district which pays it. This district ought to be protected, and courts ought to find a remedy.

The statute is capable of two interpretations,—one that the tax levied should be computed, and the amount ascertained to be collected, on the assessment roll of 1889, and the other on the assessment roll of 1890. One interpretation collects the tax that was voted and intended to be levied; the other raises $11,000 more than was intended, and compels this district to pay over $11,000 more than was intended, and, under the law as it now stands, this amount will go for the support of all the schools of the city, and the tax-payers of that district will pay that much more than their share of the school expenses of the city. Can any one claim that such was the intention of the legislature? Courts, unless compelled by the express wording of statutes, should interpret them

so as to do good, and not evil; so as to work out equity and justice, and not wrong and oppression. We conclude therefrom that it is the duty of the collector, in collecting this tax, to compute the amount to be collected upon the assessment roll of 1889. This case is reversed, and remanded for further proceedings in accordance with this opinion.

The same question is involved in the case of *Ashton et al.* v. *Hardy et al.* It is therefore reversed and remanded.

The same principles are also in question in the case of *Raybould et al.* v. *Hardy et al.* But the complaint does not raise the particular question upon which the foregoing decision turns. It is therefore reversed and remanded, with leave to the plaintiffs to amend their complaint.

MINER, J., concurred in the result.

ZANE, C. J., dissented.