## WOODCOCK v. BOARD OF EDUCATION OF SALT LAKE CITY et al.

No. 3409.    Decided January 13, 1920.    (187 Pac. 181.)

1. MANDAMUS—INJURED EMPLOYÉ MAY PERSONALLY MAINTAIN MANDAMUS TO COMPEL PAYMENT OF COMPENSATION UNDER WORKMEN'S COMPENSATION ACT. A school teacher who was awarded compensation for personal injuries by the Industrial Commission may sue in mandamus in her own name to compel the school board to pay the compensation awarded; Comp. Laws 1917, section 3130, providing that such an action could be brought in the name of the state, providing only a cumulative remedy. (Page 463.)

2. MANDAMUS—PARTY BENEFICIALLY INTERESTED MAY MAINTAIN. Mandamus is a special proceeding which the party beneficially interested may always institute and maintain in his own name and behalf. (Page 463.)

3. SCHOOLS AND SCHOOL DISTRICTS—NOT LIABLE FOR PERSONAL INJURIES. Actions for damages for personal injuries will not lie against school districts; such districts being corporations with limited powers which act merely on behalf of the state in discharging the duty of educating the children of school age in the public schools created by the general laws. (Page 463.)

4. MASTER AND SERVANT—FAILURE OF COMPENSATION ACT TO PROVIDE HOW FUNDS SHALL BE RAISED DOES NOT RELIEVE SCHOOL DISTRICTS FROM PAYING COMPENSATION FOR INJURY TO TEACHER. While the Workmen's Compensation Act merely requires school districts to pay compensation, and does not provide how the fund to pay the compensation shall be raised, yet that, standing alone, would not necessarily relieve a school district from the power or duty of paying compensation awarded, nor would

the fact that the school funds partake of the nature of trust funds. (Page 465.)

5. MASTER AND SERVANT—COMPENSATION UNDER WORKMEN'S COMPENSATION ACT NOT DAMAGES BUT SALARY. Compensation awarded under the Workmen's Compensation Act is not damages for injuries sustained, but is compensation pure and simple, being merely another term for salary or wages. (Page 469.)

6. CONSTITUTIONAL LAW—COURTS MAY NOT STRIKE DOWN LAWS BECAUSE LACKING IN DETAIL. The courts may not strike down laws or refuse their enforcement because they may be imperfect or lacking in some detail; it being the duty of the court to enforce the law as it finds it, regardless of what the results in a particular case may be. (Page 469.)

7. MASTER AND SERVANT—COMPENSATION FOR INJURIES TO TEACHER UNDER WORKMEN'S COMPENSATION ACT PAYABLE OUT OF "SUPPORT AND MAINTENANCE" FUND. Under Workmen's Compensation Act a school board is liable to an injured teacher for an amount awarded to her as compensation by the Industrial Commission, and such amount is payable out of the funds that are raised by taxation for the support and maintenance of the schools; the term "support and maintenance" under Comp. Laws 1917, section 4704, being ample in scope and meaning to cover compensation provided for in the act, where the school district has not contributed to the state insurance fund. (Page 469.)

8. STATUTES—INTENT MUST BE GIVEN EFFECT. Unless there is some constitutional or other fundamental objection, it is the duty of the courts to place such a construction upon the different provisions of the statutes as will make the legislative intention effective, unless prevented from doing so by the ordinary rules and canons of interpretation and construction. (Page 469.)

9. SCHOOLS AND SCHOOL DISTRICTS—AWARD OF COMPENSATION NEED NOT BE VERIFIED OR AUDITED. Compensation awarded a school teacher under the Workmen't Compensation Act is a liquidated claim partaking of the nature of a judgment against the school district, and the board has no discretion respecting its allowance or payment, and hence it need not be verified or audited. (Page 472.)

10. MANDAMUS—RIGHT TO HAVE ACT PERFORMED MUST BE CLEAR. Where public officers are sought to be coerced by a writ of mandate to do certain acts, the right of the plaintiff to have the acts performed must be clear, and the corresponding duty upon the officer to do the required act must be correspondingly clear. (Page 472.)

11. MANDAMUS—WILL NOT LIE TO COMPEL OFFICER TO MAKE PAY-

MENT IN ABSENCE OF FUNDS. While a public officer or board may by mandamus be coerced to pay a particular claim, in order to obtain a peremptory writ for payment, it must be alleged and, if denied, proved that such officer or board has funds with which to pay that particular claim.[1] (Page 472.)

12. MANDAMUS—SCHOOL BOARD MAY BE REQUIRED TO PAY COMPENSATION TO INJURED TEACHER IN ABSENCE OF SPECIAL APPROPRIATION. Mandamus will lie against a school board to compel payment of compensation awarded under the Workmen's Compensation Act if the board has sufficient money in the support and maintenance school fund to pay the claim, although the board has not made a special appropriation for the payment of compensation. (Page 473.)

Proceeding in mandamus by Rae E. Woodcock against the Board of Education of Salt Lake City and others to compel payment of compensation awarded under the Workmen's Compensation Act.

WRIT DENIED.

*Dan B. Shields*, Atty. Gen., and *O. C. Dalby, Jas. H. Wolfe*, and *Herbert Van Dam, Jr.*, Asst. Attys. Gen., for plaintiff.

*Cheney, Jensen & Holman*, of Salt Lake City, for defendants.

FRICK, J.

The plaintiff filed an application in this court in which she prayed for an alternative writ of mandate against the defendants as officers and members constituting the board of education of Salt Lake City, and also against said board as such. In her application, after stating the necessary jurisdictional facts and the usual matters of inducement, she in substance alleges that on a certain day named she was in the employ of said board of education, hereinafter styled board merely, as a teacher in the public schools of Salt Lake City; that on a certain day she, in the course of her employment, sustained

[1] *Hamblin* v. *State Board*, 187 Pac. 178.

certain personal injuries; that she had duly made an application to the Industrial Commission of this state, hereinafter called commission, to be awarded compensation for the injury sustained as aforesaid; that upon due notice to said board a hearing was duly had upon her said application before said commission, which, on the 25th day of July, 1919, rendered its decision against said board awarding the plaintiff the sum of "seventy-two dollars compensation, together with one hundred and twenty-eight dollars hospital expenses, fifty dollars for medical charges and eight dollars for medicines and supplies, * * * making in all the sum of two hundred and fifty-eight dollars"; that the time for an appeal from said decision and award has elapsed and no appeal has been taken by said board; that a demand for the payment of said sum of two hundred and fifty-eight dollars has been duly made on said board, which has refused and still refuses to pay the same. The facts respecting the making of said demand and the refusal of the board to comply therewith are fully stated in the application. It is further alleged that the plaintiff has no remedy by which payment of said award may be enforced except the writ of mandate, and therefore she prays that a writ issue against said board.

An alternative writ was duly issued, to which the board has filed both a special and a general demurrer, and at the same time also filed an answer. We remark that there were two separate demurrers filed; one on behalf of the individual officers and members composing the board of education, and one on behalf of the board as such. In this opinion we shall consider only the demurrers and answers filed on behalf of the board. We do so for the reason that nothing could either be gained or lost by referring specially to the demurrers and answers filed on behalf of the officers and individuals composing the board.

In the answer of the board the facts alleged in the application are practically all admitted. The answer, however, sets forth with much particularity and detail the duties and powers of the board, and states what, in the judgment of the board, constitutes good and sufficient legal reasons why the

amount awarded to plaintiff has not been paid and why the board refuses to pay the same. In view of the conclusions reached by us, the particulars of the foregoing answer are of no special significance and hence we omit further reference thereto. The board in its answer, however, also avers ''that the board of education of Salt Lake City has no moneys nor funds out of which plaintiff's claim may be paid.'' That averment is supplemented by others to the effect that the board did not have timely notice of plaintiff's claim to make provision for its payment, etc. We remark that the plaintiff omitted to state in her application that the board had money or funds on hand with which to pay the amount awarded to her by the commission. The Attorney General, who represents plaintiff in this court, took the position at the hearing that such an averment was not necessary. In view that it is more convenient for us, we shall defer consideration of that phase of the case until later on in the opinion, and will now refer to the special demurrer filed on behalf of the board.

The grounds of special demurrer are to the effect that the plaintiff lacks legal capacity to sue and that there is a defect of parties, in that the state of Utah is not named as a party plaintiff, etc. The arguments respecting those grounds blend and overlap, and hence both may be considered together.

Counsel for the board insist that in view that in the original act (Comp. Laws Utah 1917, section 3130), creating the commission and providing for the payment of compensation to injured employés, it is provided that, in the event any employer shall fail to pay the compensation awarded to an injured employé within the time specified in section 3130, the compensation awarded ''may be recovered in an action in the name of the state for the benefit of the person * * * entitled to the same,'' therefore the plaintiff should at least have joined the state with her as a party plaintiff. After considering all the provisions of the act in connection with other statutory provisions, we are of the opinion that it was not the intent or purpose of the Legislature to prevent the injured employé from prosecuting an action or proceeding in his own name if he felt so disposed. The language quoted from the

section is directory rather than mandatory.   There is nothing
in the act which indicates that the action referred to in
section 3130 was intended to be exclusive.   From the language
employed we are constrained to hold that the action or rem-
edy in that section referred to was intended to be cumulative
and not exclusive.   This view is strengthened by the fact that
under our statute, unless there is some express provision to
the contrary, it is not only proper for the real party in in-
terest, if he be competent and sui juris, to bring all actions
in his own name, but the statute requires him to do so.   Then
again, under our statute mandamus is a special pro-
ceeding which the party beneficially interested may     **1, 2**
always institute and maintain in his own name and be-
half.   We are of the opinion, therefore, that while under
section 3130, supra, the commission could have commenced the
action in the name of the state for the benefit of plaintiff, she
nevertheless had the right to bring the action or proceeding
and to prosecute the same to full determination in her own
name.   While the action provided for in section 3130 was in-
tended for the benefit of the injured employé and to save him
harmless from costs and expenses incident to the action, there
nevertheless is nothing there said or intimated which prevents
such employé from suing in his own name and behalf if he
elects to do so.

By what we have said we do not wish to be understood as
holding that it would have been improper if an action had
been commenced in the name of the state, or if the commission
had been made a party plaintiff also, or if the commission had
brought the action in the name of the state for the use and
benefit of plaintiff.   What we do hold is that such was not
necessary, and that this proceeding may be maintained in the
name of plaintiff alone.   The special demurrer must therefore
be overruled.

This brings us to the real controversy between the parties
to this proceeding.

The general law of this jurisdiction, as in most other juris-
dictions, does not authorize actions for damages for
personal injuries against school districts.   School dis-     **3**

tricts are corporations with limited powers, and act merely on behalf of the state in discharging the duty of educating the children of school age in the public schools created by general laws. The act creating the commission (Comp. Laws Utah 1917, sections 3061 to 3165, inclusive), which, for the purpose of this opinion, we may and do regard as an employés' compensation act, among other things provides:

"Sec. 3110. The following shall constitute employers subject to the provisions of this title: (1) The state, and each county, city, town, and school district therein."

Then follows a designation of other employers who are subject to the provisions of the act. Section 3111 provides:

"The term 'employé,' 'workmen' and 'operative,' as used in this title, shall be construed to mean: (1) Every person in the service of the state, or of any county, city, town, or school district therein," etc.

In other sections of the act the compensation that shall be awarded by the commission under the act in case the employé is injured in the course of his employment and the manner of its payment are fully provided for. The act also provides for a state insurance fund to which all employers may contribute the rates fixed by the commission and thus insure payment of any compensation that may be awarded to the injured employé. In section 3119 it is provided that—

"Each county, city, town, or school district which is liable to its employés for compensation may insure in the state insurance fund or pay compensation direct."

As before pointed out, the act includes all school districts within its provisions and requires them to compensate their employés in case of injury, but confers the option upon them to contribute to the state insurance fund and insure the payment of compensation from that fund, or to pay the same direct to the injured employé. In case, therefore, any employé of any school district is injured and is entitled to compensation under the act, he, as in all other cases, makes application to the commission for an award of compensation under the provisions of the act, and in case such an award is made and the school district is insured in the state insurance fund the compensation awarded is paid from that fund, but if

the school district is not insured in that fund it must pay the compensation direct.

Counsel for the board, however, vigorously contend that in view that in neither the act nor in any other statute any provision is made whereby the board is given the power to raise or provide funds for the payment of the compensation contemplated by the act, for that reason it was powerless to provide funds or means with which to pay, and hence cannot pay, the award in this case. In that connection they urge with much force that the funds at the disposal of the board are trust funds and must be devoted strictly to the purposes for which they are raised by the processes of taxation, and to divert them to other purposes would constitute a violation of the trust with which they are impressed. While it is true that the act merely requires school districts to pay the compensation provided for in the act, as before pointed out, and does not provide how the funds to pay the compensation shall be raised, yet that, standing alone, would not necessarily relieve the school district from the power or duty of paying the compensation awarded. Nor would the fact that the school funds partake of the nature of trust funds necessarily prevent the board from paying such compensation as may be awarded under the act. If the money which is paid to a teacher or other employé of the school district under the act is paid for school purposes, that is, for the support and maintenance of the schools, it still would be paid in furtherance of the trust with which school funds are impressed. The question, therefore, that arises, and which we must decide, is, Are there any funds at the disposal of the board out of which plaintiff may be paid the compensation awarded to her by the commission?

The award now has the same legal effect as a judgment against the school district would have. The powers and duties of the board are defined and fully set forth in Comp. Laws Utah 1917, sections 4680, 4681, 4682, and 4683. It is not necessary for us to specially mention or enumerate those duties and powers here. It must suffice to say that under section 4704 the means are provided by which the board may

raise the necessary funds to discharge the duties imposed upon it by those sections before referred to. Section 4704, among other things, provides:

"The Board of Education shall, on or before the 1st day of May of each year, prepare a statement and estimate of the amount necessary for the *support and maintenance of the schools* under its charge for the school year commencing on the 1st day of July next thereafter." (Italic ours.)

Estimates for other purposes are also required to be made, but those are not material here. The estimates when made are required to be filed with the officers whose duty it is to make the tax levies for the ensuing year, and when the levies are made in accordance with the estimates of the board the taxes must be collected by the county treasurer and by him paid to the treasurer of the board. The act under which plaintiff was awarded compensation went into effect on the 1st day of July, 1917. She was injured on February 27, 1919, and the award in her favor was made on the 25th day of July, 1919. It therefore was in full force and effect more than 18 months before plaintiff was injured. The question therefore is, Did or does the board have power to provide funds for the payment of compensation that may be awarded under the act?

Counsel for the board insist that under section 4704, supra, it was only empowered to provide funds for "the support and maintenance of the schools," and that the payment of compensation to teachers and other employés in case of injury is not included within the phrase "support and maintenance of the schools." Counsel frankly conceded at the hearing that the words "support and maintenance of the schools" are very broad and comprehensive in their scope and meaning. They insist, however, they are not broad enough nor comprehensive enough to include the compensation provided for in the act. It is also admitted that the only fund from which the board can and does obtain the necessary money to pay premiums to insure the schoolhouses and outbuildings is the fund for the support and maintenance of the schools. Notwithstanding that, however, they insist that that fund cannot be drawn upon to pay the compensation provided by the act. Among the cases that counsel cite and rely upon in support of their

contention are: *Ford* v. *School District, etc.,* 1 L. R. A. 607, and notes; *Ernst* v. *City of West Covington,* 116 Ky. 850, 76 S. W. 1089, 63 L. R. A. 652, 105 Am. St. Rep. 241, 3 Ann. Cas. 882; *State* v. *Board of School Commissioners,* 94 Md. 334, 51 Atl. 289; *Board of Education* v. *Volk,* 72 Ohio St. 469, 74 N. E. 646; *Collins* v. *Henderson,* 74 Ky. (11 Bush) 74. It is not claimed that the foregoing cases are decisive of the question here presented for decision. Indeed, it is but fair to state that in view of the more recent decisions relating to the subject of compensation acts for injured employés they shed little, if any, light upon the question that we must decide. Upon the other hand, the Attorney General and his assistants contend that the phrase ''support and maintenance of the schools,'' when given proper force and effect, is ample in scope and meaning to cover the compensation provided for in the act. It, they insist, certainly was the intention of the Legislature to include all school districts within the provisions of the Compensation Act, and, further, that the act in express terms confers the option on school districts of paying compensation direct or to insure its payment in the state insurance fund. How, they insist, can it successfully be contended that school buildings and outhouses may be insured from the support and maintenance fund but that the compensation for injured teachers and other employés may not be insured from the same fund? When the fact is kept in mind that the support and maintenance mentioned in the statute is not limited to school buildings and outhouses, but in express terms provides for the support and maintenance of the schools, there is much force to the contention. Then again, the compensation provided for in the act is not to be considered in the sense of damages for injuries sustained. It is precisely what the term implies, namely, compensation, pure and simple.

As applicable to ordinary employers the term compensation merely means that the funds provided to pay salaries and wages must be increased so as to meet the claims for compensation, precisely as that would have to be done in case of an increase in salaries or wages or an increase in the number of employés. Compensation, therefore, is merely another term

for salaries or wages; that is, in case of injury it merely provides for the payment of a special or reduced salary, if we may use that term, as compensation to the injured employé during the term fixed by the act. The fund, therefore, out of which the compensation must be paid in the case of an ordinary employer is the salary or wage fund, while in the case of school districts it manifestly must come out of the support and maintenance of schools fund. In this connection counsel for the board contend that if the support and maintenance fund can be drawn upon to pay compensation then that fund may be exhausted and the schools might have to close. In view that at least a portion of the salaries and wages must be paid out of that fund, the same argument would apply if it became necessary to increase the number of teachers and employés, or if the salaries of the former and wages of the latter were increased. The fund might thus become exhausted to pay the increased salaries and wages and the schools might have to close. If by reason of the law the tax limit is such that a sufficient support and maintenance fund cannot be raised for the support and maintenance of the schools, the duty is with the legislative department to pass laws authorizing school districts to raise sufficient funds. The court may not strike down laws or refuse their enforcement because they may be imperfect or lacking in some detail. It is our duty to enforce the laws as we find them, regardless of what the results in a particular case may be. Keeping in mind all of these matters, can any one successfully contend that in view of the object and purpose of the modern employés' compensation acts support and maintenance for schools includes all the necessary means for the protection and maintenance of school buildings of all kinds but does not include the protection and maintenance of the teachers, whose services are absolutely essential in maintaining schools as educational institutions? Let it be remembered that schools are not, and under the law never were, intended to be maintained for any other purpose than as educational institutions. The teacher, therefore, is, and in the nature of things must be, held to be quite as necessary to the maintenance of schools as educational institutions

as are the school buildings in which the schools are kept. In view, therefore, that the Legislature in express terms has included school districts in the Compensation Act, and furthermore provided that those districts shall pay the compensation provided for in the act to their employés and gave such districts the option of securing the payment of compensation by insuring in the state insurance fund, or by direct payment thereof, and in view of the construction we have felt constrained to give the several provisions of our statute to which reference herein has been made, the conclusion inevitably follows that the school district represented by the board is liable to the plaintiff for the amount awarded to her by the commission, and that such amount is payable out of the funds that are raised by taxation for the support and maintenance of the schools. In so holding we are not unmindful of the fact that the provisions of the statute upon which our conclusions herein are based are not as clear as they might be made. The legislative intention is, however, manifest, that the school districts of this state should comply with the provisions of the act in making compensation to their employés. In view of that fact we may not defeat that intention upon merely technical or trivial grounds. Unless there is some constitutional or other fundamental objection, it is our duty to place such a construction upon the different provisions of our statute as will make the legislative intention effective, unless prevented from doing so by the ordinary rules and canons of interpretation and construction. No constitutional or other fundamental objection has been suggested, and we have discovered no insuperable objection in the rules or canons of construction.

While counsel for both sides have been unable to find any decision in point, and while we by a somewhat thorough independent research have likewise been unable to find any, yet by reference to the statutes of some of the other states and the enforcement of the compensation acts of those states against school districts, it will be seen our conclusions are not entirely without authoritative support. While the cases of *Keenon* v. *Adams,* 176 Ky. 618, 196 S. W. 173, and *Allen* v.

*Board of Education, etc.,* 81 N. J. Law, 135, 79 Atl. 101, are far from being in point, yet those decisions have more or less analogy to the case at bar. We, however, do not cite them as authority, but merely as being more or less analogous cases. We shall not pause to review them here. The case of *Elk Grove, etc., District* v. *Industrial Acc. Com'rs,* 34 Cal. App. 589, 168 Pac. 392, by reason of the California statute, is, however, more nearly in point here. Under the California statute (St. 1909, chapter 116) school boards are required to make estimates for school purposes in form similar to those provided for in our section 4704, supra. In the case last above cited a teacher sustained personal. injuries in the course of her employment and upon making application therefor was awarded compensation under the California Compensation Act, which, so far as applicable to school districts, is practically the same as our act. Although there is nothing in the California statute, so far as we have been able to ascertain, authorizing the raising of a special fund out of which compensation to injured teachers may be made, the California court, as appears in the decision last cited, found no difficulty in enforcing the payment of the award for compensation to the teacher which was made by the California accident commissioners. The statutes of Michigan (Pub. Acts 1912, page 21), of Minnesota (Laws of Minn. 1913, chapter 467, section 34, subd. g [1]), of Illinois (St. Ill. 1913, chapter 48, section 129), of Iowa (Laws Iowa 1913, chapter 147, section 1, subd. b), of Montana (Rev. Code Mont. vol. 3, page 1070, section 6), so far as compensation acts are made applicable to school districts, are in terms similar to ours, and yet we have not found a case in which it was held that compensation could not be made to an injured teacher or other employé because no special provision was made to raise funds for that purpose. It seems that in those states the money to pay the compensation provided for by the compensation acts is obtained from the support and maintenance funds. While we cannot and do not assert with absolute certainty that such is the case, yet we do assert that the compensation acts of all of the states we have enumerated so far as applicable to school districts are

in terms like ours, and that, so far as we are aware, no special provisions are made in any of those acts or otherwise to provide for funds for the payment of compensation to teachers. We further assert that we know of no decisions emanating from the courts of those states in which it is held that the compensation acts are not enforceable for the reason that there are no special provisions authorizing the raising of funds for that purpose.

While from what has been said so far the plaintiff must prevail, yet, in view that this is a proceeding by which it is sought to coerce public officers to pay public funds in discharge of an individual claim, we are confronted with another difficulty. This difficulty does not arise from the fact that the claim in question has not been presented to the board duly verified as suggested by the board's counsel. This being a liquidated claim partaking of the nature of a judgment against the school district, the board had no discretion respecting its allowance or payment, provided it had the necessary funds with which to pay. Nor is such a claim subject to be audited as are unliquidated claims against the district. The board is therefore required either to pay or refuse to pay the award as made at its peril. The difficulty, however, arises from the fact that while the plaintiff has entirely omitted to allege that the board has funds with which to pay the award, upon the one hand, the board, upon the other hand, in its answer, has affirmatively and positively averred that it has "no moneys nor funds out of which plaintiff's claim may be paid." This court has repeatedly held that where public officers are sought to be coerced by a writ of mandate to do certain acts the right of the plaintiff to have the act performed must be clear, and the corresponding duty upon the officer to do the required act must be correspondingly clear. The last case in which the doctrine is stated is the case of *Neaf Hamblin* v. *State Board, etc.*, 55 Utah, 402, 187 Pac. 178, decided at this term, where the authorities are cited. It is not necessary to enlarge upon anything that is there said. Starting out, therefore, with the proposition that in view of all that has been said plaintiff's right to be paid the compensation awarded her

is clear and beyond dispute, yet, in view that the plaintiff has failed to allege that the board has funds with which to pay, and especially in view of the affirmative averment in its answer that it has no funds with which to pay the **9-11** award, is the duty of the board to pay also clear?

While it is true that a public officer or board may by mandamus be coerced to pay a particular claim, yet it is also true that in order to obtain a peremptory writ of mandate to require an officer or board to pay public funds it must be alleged and, if denied, proved, that such officer or board has funds with which to pay that particular claim. To that effect are all the authorities. See *Farris* v. *State*, 46 Neb. 857, 65 N. W. 890; *State* v. *Otoe County*, 10 Neb. 19, 4 N. W. 258; *City of Chicago* v. *People*, 210 Ill. 84, 86, 71 N. E. 816; 26 Cyc., pages 168, 294, 307, 317, 319. In *State* v. *Otoe County*, supra, Mr. Justice LAKE, speaking for the Supreme Court of Nebraska, tersely and correctly states the rule thus:

"In a petition for the extraordinary aid of mandamus all the essential facts necessary to entitle the party to the relief sought should be specifically set out. And where, as here, the payment of money by a public officer is the object in view, it must be distinctly shown that there are funds from which the desired payment can be legally made, or the writ will be denied."

In *City of Chicago* v. *People,* supra, it is said:

"A municipality cannot be held by mandamus to pay money out of a fund when no appropriation for that fund has been made or when the appropriation for that fund has been lawfully exhausted."

It is only the last clause of the foregoing sentence which is material here. The Attorney General and his assistants, however, insist that the averment in the board's answer that it has no funds should be qualified so as to read that it has no funds for the reason that no special provision has been made authorizing it to raise funds to pay the award. They contend that in view of the estimate that the board was required to make to raise funds for the support and maintenance of the schools we should assume that it has sufficient funds with which to pay plaintiff's claim. That, it is urged, is especially so, because it is otherwise clear from the board's answer that it made the foregoing averment only for the reasons we have

before stated.  Even though we were permitted to so qualify the board's positive averment that it is without funds with which to pay plaintiff's claim, yet under all of the authorities that, standing alone, would not cure the difficulty we have pointed out.  There still would be lacking the averment that the board has the necessary funds with which to pay.  The averments in .its answer, regardless of how construed, certainly are not equivalent to an admission on its part that it has funds with which to pay.  In what we have said upon the proposition now under consideration we are not unmindful of the expressed desire of counsel for both sides that the principal purpose in view was to obtain an authoritative construction of our compensation act, in so far as it applies to school districts.  The failure to allege and prove, or obtain an admission, that there are available funds to ·pay plaintiff's claim is, however, not merely a technical objection, but it goes. to the very root of this proceeding.  If there are no available funds with which to pay plaintiff's claim, it could not be legally ordered paid by this court by issuing a writ of mandate, even though her right to have it paid be. conceded on all hands. Public officers should not be proceeded against by the extraordinary writ of mandate unless it is clear that they are refusing to comply with some duty imposed by law, and unless it is equally clear from the pleadings that the applicant has the right to have the officer discharge such duty.  The facts whether there are funds ˉto pay a particular claim are as readily ascertainable by the applicant as by the officer.  The officer, therefore, should not be harassed nor the courts be put in motion unless there are funds on hand, and that fact should be clearly alleged and, if denied, be proved; and unless such be done the courts have no right to issue a writ of mandate.  If, however, the board has sufficient funds in the support and maintenance fund for schools to pay plaintiff's claim it should do so, and we have no doubt, in view of this decision, it will do so without being compelled to pay by the issuance of a writ of mandate.  By having funds on hand we do not mean that the board must have made a special appropriation to pay compensation, but

what we mean is that if the board has sufficient money in the support and maintenance of schools fund to pay plaintiff's claim then it has funds with which to pay the same.

In view that no printed briefs have been filed in this proceeding no order for costs will be made. In view, however, of the state of the pleadings which we have pointed out, we are powerless to order a peremptory writ of mandate, and the same must therefore be, and it is, accordingly denied.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.