## Pennsylvania Turnpike Commission Land Condemnation Case.

Argued May 24, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused August 12, 1943.

*Chas. H. Ealy,* with him *James B. Landis* and *Thomas F. Lansberry,* for appellants.

*Charles F. Uhl* and *C. L. Shaver,* with them *H. J. Woodward* and *N. L. Wymard,* Deputy Attorneys General, *James H. Duff,* Attorney General, *John D. Faller* and *Harry C. Pepper,* for appellees.

OPINION BY MR. JUSTICE LINN, June 30, 1943:

These appeals involve a claim for compensation for land taken for the Pennsylvania Turnpike. The Pennsylvania Turnpike Commission exists pursuant to the Act of May 21, 1937, P. L. 774, 36 PS section 652 (a) et seq. It is, as section 4 provides, ". . . . an instrumentality of the Commonwealth" created for the purpose of locating, constructing and maintaining a state highway between designated points on terms specified. On October 10, 1938, the Commission adopted a location over the land involved, title to which was "vested in the Commonwealth" but which was occupied and used by Somerset County Institution District for public purposes.

The appeals are from an order [1] setting aside the report of viewers on exceptions filed (a) by the Pennsylvania Turnpike Commission and (b) by the Department of Welfare, also acting for the Commonwealth. The viewers were appointed on the petition of the County Commissioners of Somerset County which petition alleged that the Commissioners were proceeding as "the administrative and executive officers of the Somerset County Institution District, a body corporate coterminous with the County of Somerset, and have in their care, custody, management and control all the buildings acquired by said Institution District for the care, . . .

---

[1] The order was: "All that we need and do decide is that the Court was without jurisdiction to appoint the viewers whose report is the subject of the present exceptions. The exceptions will be sustained, and the report of the viewers and their award will be set aside, without prejudice to the rights of the petitioners."

maintenance and treatment of mental patients, the personal property within such buildings or incidental thereto. . . ."

The petition alleged the taking of about 16.61 acres. The viewers qualified, heard evidence and made an award.[2] The exceptants objected on the ground that on October 10, 1938, when the Turnpike Commission appropriated the land, ". . . the title to the property occupied by the Pennsylvania Turnpike Commission was . . . and yet is the property of the Commonwealth of Pennsylvania, until proper legal proceedings are taken to transfer the said title by deed or other appropriate instrument and an allocation and division of the property between the Somerset County Institution District and the Commonwealth of Pennsylvania is had." Other objections need not be stated.

There are two appeals: No. 42 is by the County Commissioners acting on behalf of Somerset County; No. 43 is by the same Commissioners acting as the executive officers of the corporation, the Somerset County Institution District. Their position, so far as it need be stated, is that a large part of the 16 acres taken was

---

[2] It was in the following terms: "We have fixed the damages sustained by the petitioner, County of Somerset, Pennsylvania, the legal owner of the property by reason of its appropriation of its land at and in the sum of Fourteen Thousand Three Hundred Twenty-five ($14,325.00) Dollars providing the Act of 1938, P. L. 53, is declared by the Courts to be unconstitutional. However, if the said Act of 1938, P. L. 53, is declared to be constitutional, the said award shall be distributed in the manner as provided by Act of 1938, P. L. 53, to the Commonwealth of Pennsylvania and to the County of Somerset, Pa. In the meantime, the amount of $14,325.00 of the said award shall be paid into Court during the determination of the constitutionality of the said Act of 1938, P. L. 53, by the Courts and is payable by the Pennsylvania Turnpike Commission against which it is hereby assessed."

The erroneous statement of fact and the contingent nature of the award doubtless resulted from proceeding with the case, instead of suspending proceedings, until after the conclusion of the case challenging the constitutionality of the Act of September 29, 1938, Special Sess., P. L. 53, 50 PS section 1051.

used in the care of the indigent and not alone for the mentally ill, and was therefore subject to the contingency established in section 1, providing for reconveyance to the Institution District, of property thereafter determined by the Commonwealth not to be required for the purposes of caring for the mentally ill; that the taking for the turnpike deprived them of the possibility of reconveyance and so resulted in substantial damage, sought to be recovered in this proceeding.

The important question is one of legislative power. By certain acts approved June 24, 1937,[3] and September 29, 1938,[4] a radical change was made in the method of caring for certain classes of wards of the state. The constitutionality of the Acts was sustained in cases cited in notes 3 and 4. The Act of June 24, 1937, P. L. 2017, created in each county a corporation known as the County Institution District and transferred to it the property theretofore held by the Poor District. In 1938,[4] a subsequent transfer of title was made when the property of the County Institution District was ". . . transferred to and vested in the Commonwealth of Pennsylvania." Section 1, in part, provided: "Where any lands and property so transferred are presently used by any institution district as a farm and woodlands in connection with buildings dedicated to the care and maintenance of indigent persons who are not mental patients, the Department of Welfare of the Commonwealth, with the approval of the Governor, shall set apart and reconvey to the institution district, through deed executed by the Secretary of Property and Supplies of the Commonwealth, so much of such ground as the ratio of indigent persons bears to the total patient population of the institution, as shall be determined by the Depart-

[3] Acts of June 24, 1937, P. L. 2003, P. L. 2017, P. L. 2051, considered in *Poor District Case (No. 1)*, 329 Pa. 390, 197 A. 334; and *Poor District Case (No. 2)*, 329 Pa. 410, 196 A. 837.

[4] Act of September 29, 1938, Special Sess., P. L. 53, 50 PS section 1051 et seq., considered in *Commonwealth ex rel. Schwartz v. Bierly*, 339 Pa. 213, 13 A. 2d 714; *Chester County Institution District v. Commonwealth*, 341 Pa. 49, 17 A. 2d 212.

ment of Welfare of the Commonwealth. The metes and bounds of the lands so to be conveyed shall be determined by agreement between the Department of Welfare of the Commonwealth and the authorities of the institution district. In case the Department of Welfare of the Commonwealth and the authorities of the institution district cannot agree as to the metes and bounds of the lands so to be conveyed to the institution district, the matter shall be laid before the court of common pleas of the county where the lands are located by petition of either the Secretary of Welfare of the Commonwealth or the authorities in charge of the institution district, which court, after hearing all parties in interest, on such notice as it shall direct, shall determine the metes and bounds of the lands which shall be conveyed to the institution district and shall enter an order accordingly. . . .

"Any property so transferred to and vested in the Commonwealth shall, if found suitable in accordance with this act, be thereafter used as a State mental hospital, but if such property shall, within one year thereafter, be found unsuitable for such purpose, or shall, within one year after transfer to and use by the Commonwealth as a State mental hospital, be thereafter abandoned by the Commonwealth as such a hospital before substantial improvements thereto have been made, then, in either event, such building lands and personal property so transferred to the Commonwealth shall absolutely revert to and vest in the county, city or institution district from which transferred, and the Commonwealth shall have no further claim or title thereto."

It was suggested in argument that the title to that part of the property used exclusively in the care of the indigent was vested, by the Act, in the Commonwealth only in trust for the Institution District and that this equitable interest should entitle the Institution District to compensation. The argument must be rejected because the statute contains no provision requiring the

Commonwealth, acting by its agent the Turnpike Commission, to compensate the Institution District, also a state agency. The Poor Districts were and the Counties and the Institution Districts are state agencies performing governmental functions; subject to constitutional limitations not involved in this case, the Commonwealth has absolute control over such agencies with power to add to or subtract from the duties to be performed by them or to abolish them and take the property used for public purposes without compensating the agency therefor: *Chester County Institution District v. Commonwealth*, 341 Pa. 49, 17 A. 2d 212; *Poor District Case (No. 2)*, 329 Pa. 410, 414, 196 A. 837; *Philadelphia v. Fox*, 64 Pa. 169, 181; *Hunter v. City of Pittsburgh*, 207 U. S. 161, affirming *Pittsburg's Petition*, 217 Pa. 227, 66 A. 348; *Commonwealth v. Moir*, 199 Pa. 534, 541, 49 A. 351; *Tippecanoe County v. Lucas*, 93 U. S. 108, 114; *City of Trenton v. State of New Jersey*, 262 U. S. 182, 188; *Puget Sound Power & Light Co. v. County of King*, 264 U. S. 22, 28. .

As the title to the 16.61 acres in question was, on October 10, 1938, in the Commonwealth, neither Somerset County, whose title had been divested by the Act of 1937, P. L. 2017, section 301, 62 PS section 2251, nor the Somerset County Institution District, whose title had been divested by the Act of 1938, P. L. 53, section 1, 50 PS section 1051, was owner of any interest in it for which either, by the terms of the statute, could recover compensation from the Commission and therefore had no standing to apply for viewers. The fact that the land was originally purchased by Somerset County for use in caring for the indigent is immaterial under the principle defining the power of the state over its agencies performing governmental duties.

The order setting aside the report of the viewers is affirmed and the petition for viewers is dismissed, each party to pay its own costs.