368 P.2d 468

**STATE of Utah, by and through its ROAD COMMISSION, Plaintiff and Appellant,**

v.

**SALT LAKE CITY PUBLIC BOARD OF EDUCATION, Defendant and Respondent.**

No. 9424.

Supreme Court of Utah.

Jan. 5, 1962.

Walter L. Budge, Atty. Gen., Robert S. Campbell, Jr., Asst. Atty. Gen., Rex J. Hanson, Sp. Asst. Atty. Gen., for appellant.

Marr, Wilkins & Cannon, Paul B. Cannon, John W. Horsley, Salt Lake City, for respondent.

---

8. State v. Dickson, 12 Utah 2d 8, 361 P.2d 412; State v. Herrera, 8 Utah 2d 188, 330 P.2d 1086.

McDONOUGH, Justice.

The State Road Commission, in connection with the construction of a new freeway through Salt Lake City (Interstate Highway 15) found it necessary to condemn the Franklin School, belonging to the Salt Lake City Board of Education. Possession was taken by stipulation of counsel and pursuant to an order of court made thereon April 20, 1960, and the question of compensation was reserved for trial.

The Board in its answer asked for $550,000 as the market value of the property at the time of its appropriation.[1] At the pretrial hearing, the defendant requested and was allowed to amend to ask for $709,-000 on the stated theory that it was entitled to damages equal to the replacement cost of a school of equal quality, rather than the market value at the time of taking.

The plaintiff, through the attorney general, took the position that the defendant was entitled to no compensation whatsoever; or in the alternative that damages would be limited to those first claimed in the answer. The court then set a hearing to determine the question, among others, whether the plaintiff should be required to pay for the property. Thereafter the

plaintiff moved for summary judgment, arguing that inasmuch as the property was merely being transferred from one public use and one public agency to another, it was not obliged to pay. The trial court denied plaintiff's motion, whereupon it filed this petition for interlocutory appeal, urging that if this court ruled favorable to its position, that would eliminate the necessity of the trial on the matter of damages, and we granted the petition.

Plaintiff cites authorities for the proposition that one agency of the state, acting pursuant to statutory duty, is not required to pay compensation for taking public property held by another state agency.[2] It relies on the case of the School District of Borough of Speers v. Commonwealth of Pennsylvania,[3] wherein the court said:

"(It) has always been held that the Commonwealth may take property of a political subdivision or agency without payment therefor, (citing authorities), the right to compensation in such cases being only a matter of grace or allowance by the Legislature."

Our consideration of that case and other authorities relied on indicates that the resolution of such a problem depends on the

---

1. This is the measure of damages quite generally recognized. See State By and Through Road Commission v. Peterson et al., 12 Utah 2d ——, 366 P.2d 76.
2. In re Condemnation of Land by Pennsylvania Turnpike Commission v. Somerset County, 347 Pa. 643, 32 A.2d 910; State

Highway Commission of New Jersey v. City of Elizabeth, 102 N.J.Eq. 221, 140 A. 335; Orgel, Valuation Under Eminent Domain, 2d Ed., Sec. 42; 2 Nichols on Eminent Domain, Sec. 5.9 at p. 223; 56 A.L.R. 365 at 366.
3. 383 Pa. 206, 117 A.2d 702, 703.

intent shown in the particular statute involved.[4] Therefore the critical inquiry here is whether our legislature intended that a school board's property should be taken for highway purposes without being paid for it.

The basis for the exercise of the power of eminent domain is set forth in Chapter 34, Title 78, U.C.A.1953. It is important to note that the act shows that the legislature had in mind that necessity may require that property devoted to one public use may be taken from its public owner if it was required for a different and more necessary public use. But in spite of this awareness, it made no distinction between the method of taking public or private property. It is true that the statute does not state specifically whether compensation is to be paid to the public agency from which it is taken. But without making any distinction between the method of taking public or private property, the statute requires any condemnor, whoever or whatever it may be, without any exception, to take all of the essential steps to condemnation. It is required that "all owners"[5] of the property taken should be named as defendants in the complaint;[6] that the "value of the property sought to be condemned" shall be "separately assessed"[7] and that the taker pay the sum of money so assessed "within thirty days."[8]

If there be any uncertainty as to the meaning and the proper application of the statute, either from its language or its failure to make express provision for circumstances in which it may be found to operate, it is proper to look both to the purpose for which it was created, and to the practical aspects of its operation in order to assist in determining the legislative intent.[9]

The gravamen of the plaintiff's argument is that it should not be supposed that the legislature would require that one public agency, under the necessity of taking the property of another, should compensate it because that would be the same as taking public money out of one pocket and putting into another. This argument may appear on the surface to have some merit, and it would in fact have some validity if the resources of the state could be regarded as one unified fund. But the argument is not sound, because that is not the fact. The fallacy is apparent when consideration is given to the means the legislature has created for the raising of the funds for

4. School District of Borough of Speers v. Commonwealth of Pennsylvania, footnote 3, supra; State by State Highway Commissioner v. Cooper, 24 N.J. 261, 131 A.2d 756; State ex rel. State Highway Commissioner v. City of Albuquerque, 67 N.M. 383, 355 P.2d 925.

5. Sec. 53–4–8, U.C.A.1953, provides that school boards may "take, hold, lease, sell and convey real and personal property" in their own names.
6. Sec. 78–34–6(2), U.C.A.1953.
7. Sec. 78–34–10(1), U.C.A.1953.
8. Sec. 78–34–13, U.C.A.1953.
9. See Bateman v. Board of Examiners, 7 Utah 2d 221, 322 P.2d 381.

the operation of the individual school districts in the state. It has provided a comprehensive and finely balanced plan for raising the funds for the various school districts and delegated responsibilities in connection with the raising and management of such funds to the various school boards. The tax funds so collected in the school districts are not covered into the general fund for the running of the state government at large, but are collected for the particular purpose of operating the public schools. If an individual state agency such as the Road Commission could reach over and take a property such as this Franklin School, worth several hundred thousand dollars, from a single school board, that would disrupt the balanced plan for the financing of schools. As a practical matter it would create insuperable obstacles for school boards in managing their schools. We see nothing either in the express words of the statute or in its nature or purpose which suggests that the legislature intended any such result.

The incongruity is even more apparent when it is realized that this project is not just a state highway but is part of a federal interstate system which is being constructed not only for Utah but for the whole United States. This principle is recognized by the federal government, which is participating in the cost of construction, including the acquisition of the right of way, to the extent of about 90% of the total cost. While the fact that the federal government is participating in the cost because the road is for the benefit of the entire nation has no bearing on determination of the legal issues involved, and would not be admissible in evidence, it does point up dramatically how incongruous and inequitable it would be to impose the entire cost of the right of way upon this individual school board.

From the language of the eminent domain statute, as well as upon the basis of its purpose and practical application, it is our conclusion that the legislature intended that public property of the character of this Franklin School should be taken and compensated for the same as if it had been taken from a private owner.

Affirmed. No costs awarded.

WADE, C. J., and CROCKETT, J., concur.

HENRIOD, Justice (dissenting).

In dissenting, I am convinced that the main opinion cannot stand the test of correct statutory construction, or the import of stare decisis.

The Board of Education is an agency of the state,[1] subject to its plenary control and elimination, if so determined.[2] Obviously

1. Bingham v. Board of Education, 118 Utah 582, 223 P.2d 423 (1950).

2. " 'Municipalities are the creatures of the state, and the powers given to them are

**60**

the Board was using the school in a governmental capacity,[3] and no one seriously would contend otherwise. It seems to be conceded that the interstate highway is charged with a more necessary use.

Two agencies of the state are involved. In such event, that one which by legislative sanction is interdicted to construct a facility having a more necessary use, prevails.[4]

Art. 1, Sec. 22 of the Utah Constitution prohibits the taking of *private* property without compensation.[5] Not *public* property. Respondents must concede that were it not for Title 78–34, U.C.A.1953, and its subdivisions, no compensation would need to be paid for the taking of the subject

property. It must hang its hat on Title 78–34–3(3), or not at all. Therein is found the only reference to public property. All other sections obviously deal with *private* property and the procedure for its condemnation. The very title of the section upon which respondent relies reads as follows: *"Private* property which may be taken," and its preamble is to the effect that "The *private* property which may be taken under this chapter includes." It seems obvious, therefore, that subsection (3) had to do with *private* property, and that any reference to public property had to do with that held in a private or proprietary capacity, if at all. Else, the section makes no sense. The property here having been held in a

always subject to be abridged or repealed by the sovereign who conferred them.' * * * Property may be held by a municipal corporation either in its *governmental* or in its private *proprietary* capacity. If the former, it is held as an agency of the state, and property so held may be reclaimed by the state at any time without compensation." State Highway Comm. of New Jersey v. City of Elizabeth, 140 A. 335, 337. "Even upon the assumption that a city or town has acquired absolute ownership of property as an agency of the state, if it is held strictly for public uses, it may be transferred to some other agency of government charged with the same duties, or it may be devoted to other public purposes, without the consent of the city or town to which it may belong, and without compensation, since it is subject to legislative control." 56 A.L.R. 366. " * * * the Commonwealth has absolute control over such agencies with power to add to or subtract from the duties to be performed by them or to abolish them and take the

property used for public purposes without compensating the agency therefor." In re Condemnation of Land by Pennsylvania Turnpike Comm. v. Somerset Co., 32 A.2d 910, 913 (Pa.1943) ; Raybould v. Hardy, 7 Utah 368, 26 P. 982.

3. "Certainly, the maintenance of public schools * * * calls for the exercise of governmental functions." Brush v. Comm., 300 U.S. 352, 57 S.Ct. 495, 500, 81 L.Ed. 691 (1937) ; Woodcock v. Board of Education, 55 Utah 458, 187 P. 181, 183, 10 A.L.R. 181 (1920), which said "School districts are corporations with limited powers, and act merely on behalf of the state in discharging the duty of educating the children of school age in the public' schools created by general laws." Nichols, Eminent Domain, Vol. 2, p. 223, Sec. 5.9.

4. Salt Lake County v. Liquor Control Commission, 11 Utah 2d 235, 357 P.2d 488 (1960).

5. "Private property shall not be taken or damaged for public use without just compensation."

governmental capacity, it follows that it was not compensable when being transferred from one government agency to another for a higher and better use.[6]

All this points up the nub of this case: In light of the obvious purpose and intent of Art. 1, Sec. 22 of the State Constitution, to prevent taking of *private* property without compensation, with an equally obvious and significant failure to include *public* property therein, together with an assist from the familiar maxim of "expressio unius est exclusio alterius" does Title 78–34 *clearly* require that the Constitution be interpreted to require compensation for *public* property taken, and make "public property" clearly synonymous with *private* property, in a constitutional sense? The answer would seem to demand an inescapable "No." The main opinion's rationale does not call for any other answer.

Like the respondent, the majority opinion must hang its hat on Title 78–34, U.C.A. 1953, or not at all. But there is no hat rack. In substance and effect the opinion, without authoritative support, justifies itself generally as follows:

1. That "the legislature had in mind" that necessity may require the taking of public property for a more necessary public use. Agreed. This observation proves nothing however except to restate the statute. It does not explain where anything is said *specifically* or *clearly* to the effect that compensation must be paid in such event, when the Constitution indicated otherwise.

2. That the act made no distinction as to *method* in condemning public or private property. This statement is not helpful. The act is procedural. It does not specifically provide for payment in case of taking *public* property. Such nonspecificity does not require any overhauling of Art. 1, Sec. 22, by Title 78–34. Significantly it actually lends stature to the purpose and intent of the constitutional provision that obviously and meaningfully did not interdict the taking of *public* property without compensation. This, in silent tribute to the philosophy that the agencies of the state are subservient to it.

3. That the act requires a condemnor to take certain steps to condemn, including the fact that "all owners" be made defendants, that the "value" shall be "separately assessed," the taker to pay within 30 days. The suggestion that such provisions apply to *public* property taken for a more necessary use, belies the plain wording of the Title, and begs the question. Firstly, the

---

6. "With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. * * *" People ex rel. Dixon v. Community Unit School Dist., 2 Ill.2d 454, 118 N.E.2d 241, 246. See cases in footnote 2.

Board of Education is owner of nothing save by the grace of the state.[7] Its property belongs not to itself but to the people of the state, who are its parents. The argument of the main opinion fails to disclose that the act contemplates *private,* not *public* property, as its subject matter. Nowhere can be found any specific or implied suggestion that the eminent domain statute applies to anything but private property, or, at best, private property held by a state agency, not in a governmental capacity, but in a proprietary one.[8] Thus, any such suggestion does violence to principles of constitutional and statutory construction and their implications, generally epitomized by the "expressio unius" maxim mentioned above.

4. That although there is merit to the argument that to take from one state agency for another would take from one pocket to put in another, such argument is fallacious since the school money is not in a unified fund coverable into the general fund. The main opinion then, by way of novelty, concludes that if the highway department ac-quires part of the school board's "property," so-called, without compensation therefor, "that would disrupt the balanced plan for the financing of schools" and that "as a practical matter it would create insuperable obstacles for school boards in managing their schools." The suggestion in support of such conclusion does not merit any consideration from a legal standpoint, since it simply substitutes a philosophical point of view for binding legal authority.

5. That even though federal participation is uncontrolling here, it dramatically points up the inequities of taking school property for a higher and better public use. Such suggestion in turn suggests a sort of objectivity complex divorced from juridical justification. It has no place in the decision.

Again: The main opinion gives no good legal reason for its decision. It cites no authority for it except its own voluntary conclusion that things would be too disrupted if we decided otherwise. It ignores constitutional implications and invokes the

---

7. "The 'property of the school district' is a phrase which is misleading. The district owns no property, all school facilities, such as grounds, buildings, equipment, etc., being in fact and law the property of the State and subject to the legislative will." Pritchett v. County Board of School Trustees, 5 Ill.2d 356, 125 N.E. 2d 476, 478 (1955).

8. "Where property of a municipality is condemned * * * the municipality's right to compensation depends on whether the court decides that the property is held * * * in .a proprietary or in a governmental capacity. If proprietary, the property must be paid for. If for governmental purposes, no payment need be made by the state." Orgel, Valuation Under Eminent Domain, 2d Ed., Sec. 42. N. B. No one would question that the school in the instant case was being used for anything save for a governmental purpose.

provisions of a completely nonspecific statute to justify its rationale making public property synonymous with private property, constitutionally, and legislatively, when any such synonymity simply is not there. (Emphasis supplied.)

CALLISTER, Justice, concurs in the view expressed in the opinion of Mr. Justice HENRIOD.